Philip R. WORKMAN

v.

STATE of Tennessee.

Supreme Court of Tennessee,
at Nashville.

March 29, 2001.

Robert L. Hutton, Memphis, TN, for the appellant, Phillip R. Workman.

Paul G. Summers, Attorney General & Reporter, Michael E. Moore, Solicitor General, Glenn R. Purden, Senior Counsel, Alice B. Lustre, Assistant Attorney General, and John Campbell, Assistant Attorney General, for the appellee, State of Tennessee.

George E. Barrett, Edmond L. Carey, Jr., Cecil D. Branstetter, and James G. Stranch, III, Nashville, TN, appearing as Amicus Curiae.

### MAJORITY OPINION

DROWOTA, BIRCH, and HOLDER, JJ., delivered the opinion of the court.

Phillip R. Workman filed this action in the Criminal Court for Shelby County, seeking, inter alia, a petition for a writ of error coram nobis. He sought this writ based on claims that new evidence, which was unavailable at his trial and which has never been evaluated in a hearing in this State's courts, shows that he is actually innocent of capital murder. The trial court denied this motion on the basis that the statute of limitations barred consideration of the petition. The Court of Criminal Appeals affirmed. Upon consideration of the application for permission to appeal filed by Workman and the answer in opposition filed on behalf of the State of Tennessee, a majority of this Court concludes that the application should be granted. Because we find, under the circumstances of this case, that due process requires that Workman be granted a hearing to evaluate his claims, we reverse the decision of the Court of Criminal Appeals affirming the trial court's dismissal of the petition for writ of error coram nobis. Accordingly, the stay of execution is granted. The case is remanded to Division III of the Criminal Court for Shelby County for a hearing on the petition for writ of error coram nobis.

In this case, the trial court held that Workman's petition for a writ of error coram nobis is barred because he failed to file it timely within the statute of limitations. *See* Tenn.Code Ann. § 40–26–105. The trial court rejected Workman's claim that the due process considerations discussed in *Burford v. State,* 845 S.W.2d 204 (Tenn.1992) require tolling of the statute of limitations. For the reasons that follow, we reverse the decision of the trial court and order a hearing on Workman's petition for writ of error coram nobis.

In our view, the due process considerations discussed in *Burford,* and more recently in *Seals v. State,* 23 S.W.3d 272 (Tenn.2000) and *Williams v. State,* 44 S.W.3d 464 (Tenn.2001), released just today, apply with even greater force when the statute of limitations is being applied in a capital case to bar a claim that newly discovered evidence may prove that the defendant is actually innocent of the capital crime of which he was convicted.[1]

---

1. *See State v. Severs,* 759 S.W.2d 935, 938 (Tenn.Crim.App.1988) (concluding that a felony murder conviction is inappropriate in a case in which the killing, committed by the intended robbery victim, was not in pursuance of the unlawful act, but rather to thwart it), *cited with approval in State v. Buggs,* 995 S.W.2d 102, 106 (Tenn.1999).

In *Burford,* this Court discussed the due process requirements that govern access to post-conviction relief. In that case, four of the five convictions used to enhance a persistent offender sentence had been set aside. Burford filed a post-conviction petition within three years of the date the convictions were set aside, but not within three years of the date of final action on the sentence. This Court concluded that:

> while the statute of limitations is not unconstitutional on its face, it is unconstitutional as applied in petitioner's case because it denies him due process under the state and federal constitutions.

*Id.* at 205. In reaching that conclusion, the Court recognized that,

> ... before a state may terminate a claim for failure to comply with procedural requirements such as statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner.
> ....
> ... it is possible that under the circumstances of a particular case, application of the statute may not afford a reasonable opportunity to have the claimed issue heard and decided.

*Id.* at 208. In determining what process is due for post-conviction claims, or in other words, what opportunity must be given, the Court used this balancing analysis:

> Identification of the precise dictates of due process requires consideration of both the governmental interests involved and the private interests affected by the official action....

This Court stated that the private interest at stake in *Burford* was "a prisoner's opportunity to attack his conviction and incarceration on the grounds that he was deprived of a constitutional right during the conviction process." *Id.* at 207. This Court further stated that "[t]he governmental interest represented by the three-year statute of limitations contained in Tenn.Code Ann. § 40–30–102 is the interest in preventing the litigation of stale and groundless claims." *Id.* After weighing those interests, the Court in *Burford* determined that the prisoner's interest in mounting a constitutional attack upon his conviction and incarceration outweighed the State's interest in preventing the litigation of stale and groundless claims. Accordingly, the Court in *Burford* held that the claim, though filed beyond the statute of limitations, was not barred because to apply the statute under those circumstances would violate Burford's right to constitutional due process.

Recently, in *Seals,* this Court held that "due process requires tolling of the statute of limitations where a petitioner is denied the reasonable opportunity to assert a claim in a meaningful time and manner due to mental incompetence." *Seals,* 23 S.W.3d at 279. We explained that "if the petitioner was mentally incompetent, and therefore legally incapable, he would be denied any opportunity to assert his constitutional rights in a post-conviction petition, unless the period of limitations was suspended during his mental incompetence." *Id.* at 278.

Just today, in *Williams,* this Court further explained the analysis required by *Burford* when a statute of limitations is employed to bar a claim for post-conviction relief. In *Williams,* the defendant's attorney failed to withdraw in accordance with the dictates of Supreme Court Rule 14 following the initial appeal as of right to the Court of Criminal Appeals. As a result, neither the attorney nor the defendant timely filed an application for permission to appeal in this Court. Eventually, an untimely application was filed and dismissed, and at the time of its dismissal,

three months remained within which to timely file a petition for post-conviction relief. However, Williams did not file within that time; he actually filed nine months after the expiration of the one-year statutory period. Nevertheless, the majority in *Williams* remanded the case to the trial court for a hearing to determine whether due process required tolling of the statute of limitations, on the basis that "the appellee might have been denied the opportunity to challenge his conviction in a timely manner through no fault of his own but because of the possible misrepresentation of his counsel." *Williams,* 44 S.W.3d at ——, 2001 WL 304163.

█ Clearly, in a variety of contexts, due process may require tolling of an applicable statute of limitations. As in *Burford,* to determine whether due process requires tolling in this case, we must consider the governmental interests involved and the private interests affected by the official action. In this case, as in *Burford,* the governmental interest in asserting the statute of limitations is the prevention of stale and groundless claims. The private interest involved here is the petitioner's opportunity to have a hearing on the grounds of newly discovered evidence which may have resulted in a different verdict if heard by the jury at trial. If the procedural time bar is applied, Workman will be put to death without being given any opportunity to have the merits of his claim evaluated by a court of this State.

█ Weighing these competing interests in the context of this case, we have no hesitation in concluding that due process precludes application of the statute of limitations to bar consideration of the writ of error coram nobis in this case. Workman's interest in obtaining a hearing to present newly discovered evidence that may establish actual innocence of a capital offense far outweighs any governmental

interest in preventing the litigation stale claims. Workman has raised serious questions regarding whether he fired the shot that killed Memphis Police Lieutenant Ronald Oliver. If he did not fire that shot, he is not guilty of the crime for which he is scheduled to be put to death. These claims are based upon evidence obtained from the Shelby County Medical Examiner's Office long after the conclusion of the state post-conviction proceedings. The delay in obtaining this evidence is not attributable to the fault of Workman or his attorneys. In fact, Workman previously had filed a subpoena requesting an x-ray of this type, but it was not provided. No court in this State has actually held a hearing to fully evaluate the strength of these claims. Under such circumstances, Workman's interest in obtaining a hearing on these claims clearly outweighs the governmental interest embodied in the statute of limitations. Accordingly, due process precludes summary dismissal of this claim based upon a statutory time bar.

█ The fact that this petition for writ of error coram nobis was filed approximately thirteen months after discovery of the evidence at issue does not change the foregoing conclusion. *Burford* and its progeny clearly mandate that a petitioner be afforded a "reasonable opportunity after the expiration of the limitations period to present his claim in a meaningful time and manner." *Williams,* 44 S.W.3d at ——, 2001 WL 304163. Upon consideration of the circumstances of this case, we conclude that the time within which this petition was filed does not exceed the reasonable opportunity afforded by due process. Indeed, "the magnitude and gravity of the penalty of death persuades us that the important values which justify limits on untimely ... petitions are outweighed" by Workman's interest having a court evaluate newly discovered evidence that may

show actual innocence of the capital offense. *In re Clark,* 5 Cal.4th 750, 21 Cal. Rptr.2d 509, 855 P.2d 729, 760 (1993).

For the foregoing reasons, we conclude that the decision of the trial court dismissing the writ of error coram nobis should be reversed and the case remanded for a hearing. At the hearing, Workman will have the opportunity to establish that newly discovered evidence may have resulted in a different judgment if the evidence had been admitted at the previous trial. *See* Tenn.Code Ann. § 40-26-105. If he makes this showing, and if he also establishes that he "was without fault" in failing to present the newly discovered evidence at the appropriate time, he will be entitled to a new trial. *Id.; see also State v. Mixon,* 983 S.W.2d 661, 673 n. 17 (Tenn. 1999) (setting out the showing required if the newly discovered evidence is recanted testimony).

ANDERSON, C.J., and BARKER, J., filed a dissenting opinion.

RILEY ANDERSON, C.J., and WILLIAM M. BARKER, J., dissenting.

On March 28, 2001, two days before his scheduled execution, Philip R. Workman filed in the Criminal Court for Shelby County, a motion to reopen post-conviction petition, a request for declaratory judgment, a petition for writ of error coram nobis and a motion for stay of execution. After a hearing on March 29, 2001, the trial court denied relief on all claims. The Court of Criminal Appeals affirmed. This Court granted Workman's application for permission to appeal. A majority of this Court has determined that Workman is entitled to a hearing on his petition for writ of error coram nobis. For the reasons stated below, we dissent and would affirm the judgments of the lower courts.

## Motion to Reopen

Workman filed a motion to reopen his post-conviction petition, asserting that "new scientific evidence establish[es] that [he] is actually innocent of [felony murder]." Tenn.Code Ann. § 40-30-217(a)(2). Specifically, Workman contends (1) that an x-ray, which the State provided to him on March 2, 2000, demonstrates that the bullet that killed Memphis Police Lieutenant Ronald Oliver did not fragment, but instead emerged from his body intact; and (2) that based upon Dr. Kris Sperry's affidavit interpreting the x-ray, Workman did not shoot Lt. Oliver.

Assuming, without deciding, that this evidence constitutes "new scientific evidence," we would conclude that the evidence does not establish by clear and convincing proof that he "is actually innocent." The x-ray evidence and Dr. Sperry's affidavit do not conclusively establish that Workman did not fire the fatal shot. Instead, this evidence merely propounds a different theory than that presented at the original trial. Like the petitioner in *Herrera v. Collins,* 506 U.S. 390, 418, 113 S.Ct. 853, 870, 122 L.Ed.2d 203 (1993), Workman

> does not appear before us an innocent man on the verge of execution. He is instead a legally guilty one who, refusing to accept the jury's verdict, demands a hearing in which to have his culpability determined once again.

*Id.* at 419–420, 113 S.Ct. at 870 (O'Connor, J., concurring).

Furthermore, we agree with the trial court that this evidence proves nothing that was not already known from the original autopsy and photographs. In affidavits prepared prior to review of the x-ray, Dr. Sperry concluded that the bullet that struck Lt. Oliver exited in once piece, and therefore, did not come from Workman's gun. Accordingly, the x-ray does nothing

more than corroborate Dr. Sperry's previous affidavits and does not therefore constitute "new scientific evidence" within the meaning of the statute which would be sufficient alone to establish Workman's innocence.

### Declaratory Judgment

Additionally, Workman filed a complaint for declaratory judgment under Tenn.Code Ann. § 29–14–102(a), which provides that "[c]ourts of record within their respective jurisdictions have the power to declare rights, status and other legal relations whether or not further relief is or could be claimed." He sought a declaration that Tennessee Constitution, Art. I §§ 8, 16 and 32 prohibit the execution of a person who presents substantial evidence that he is factually innocent of capital murder, and that the same provisions of the Tennessee Constitution require an evidentiary hearing when a person claims actual innocence and alleges that there has been fraudulent concealment of exculpatory evidence by state officials. Essentially, Workman is claiming that the Tennessee Constitution prohibits the execution of an innocent person.

In support of these claims, Workman submits the "new scientific evidence" discussed above and evidence that Harold Davis, a witness who testified at the original trial, has recanted his testimony. Assuming, without deciding, that our state constitution prohibits the execution of an innocent person, we would conclude as stated in the previous section that the evidence does not establish that Workman is actually innocent.

### Writ of Error Coram Nobis

In his petition for writ of error coram nobis, Workman alleges that he should be granted a new trial based upon grounds of newly discovered evidence. The primary factual bases alleged in support of these grounds are (1) new scientific evidence that Workman did not fire the fatal shot that killed Lt. Oliver, and (2) a statement by Harold Davis recanting his trial testimony.

The writ of error coram nobis is an extraordinary remedy available to those convicted of crimes who can show that newly discovered evidence relating to matters litigated at the trial may have resulted in a different judgment had it been presented at the trial. Tenn.Code Ann § 40–26–105. *See State v. Hart*, 911 S.W.2d 371, 374 (Tenn.Crim.App.1995).

Judge Colton denied the petition for writ of error coram nobis because it was filed outside the one-year statute of limitations. *See State v. Mixon*, 983 S.W.2d 661, 670–671 (Tenn.1999) (citing Tenn.Code Ann. § 27–7–103). The decision to grant or deny a petition for writ of error coram nobis rests within the sound discretion of the trial court. *State v. Hart*, 911 S.W.2d at 375. Workman concedes that he did not timely file his petition. However, citing *Burford v. State*, 845 S.W.2d 204 (Tenn. 1992), he contends that applying the statute of limitations would be unconstitutional in this case because he had neither the x-ray evidence nor Davis' statement recanting his trial testimony within the limitations period. In *Burford*, this Court held that the application of the post-conviction statute of limitations in certain limited situations might violate due process. *Id.* at 208.

Assuming, without deciding, that the statute of limitations was tolled during the time that Workman was unaware of this evidence, the record in this case shows that more than one year, the time provided by the statute of limitations, has passed since he first became aware of the evidence. Accordingly, he has had a reason-

**106**

able opportunity to present his claims, and, therefore, due process is not implicated.

Furthermore, there is no indication that Workman has been denied the opportunity to present these claims in a timely manner due to the possible misrepresentation of his counsel. *Cf. Williams v. State*, 44 S.W.3d 464, 2001 WL 304163 (March 29, 2001). Indeed, the delay in filing these claims appears to us to be a tactical decision on the part of counsel to obtain delay in the execution of his sentence. Workman is bound by the actions of his attorneys in taking this approach. *See House v. State*, 911 S.W.2d 705, 714 (Tenn.1995).

### *Motion for Stay of Execution*

Inasmuch as we would find no merit to any of Workman's claims for relief, we would deny the motion for stay of execution.