# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### April 3, 2002 Session

## MICHAEL EUGENE SAMPLE  v.  STATE OF TENNESSEE

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Shelby County**
**No. P-14252     Hon. Bernie Weinman, Judge**

---

**No. W1999-01202-SC-R11-PC - Filed August 2, 2002**

---

WILLIAM M. BARKER, concurring in part, dissenting in part.

In the majority's opinion today, I find much with which to agree.  For example, I concur in the majority's holding that our decision in Wright v. State, 987 S.W.2d 26 (Tenn. 1999), did not create a *per se* bar against all later-arising claims alleging suppression of exculpatory evidence.  I also agree with the majority that a defendant may bring such a claim, notwithstanding the running of the statute of limitations under the Post-Conviction Procedure Act, so long as any delay in filing the petition for relief is reasonable under all the circumstances.  Finally, I agree that the Middlebrooks error here is harmless beyond a reasonable doubt under the standard recognized by this Court in State v. Howell, 868 S.W.2d 238 (Tenn. 1993).

However, I write separately to respectfully express my disapproval with the majority's reliance on Workman v. State, 41 S.W.3d 100 (Tenn. 2001), as authority for finding that the defendant in this case made a timely filing for post-conviction relief.  I was one of two members of this Court who dissented from the decision in Workman, and I regret that it has been used today as authority to toll the post-conviction statute of limitations for a sixteen-month period.

### I.  Shortcomings of *Workman v. State*, 41 S.W.3d 100 (Tenn. 2001)

A mere two days before his scheduled execution, Philip Workman filed a motion to reopen his post-conviction petition under Tennessee Code Annotated section 40-30-217(a)(2) (1997), claiming that he possessed new scientific evidence that showed his actual innocence of the crime for which he was sentenced to death.  He also filed a motion seeking a writ of error coram nobis.  Both the trial court and the Court of Criminal Appeals denied these petitions, finding that he was not eligible to reopen his post-conviction petition under the statutes and that his motion for the writ of error coram nobis was barred by the statute of limitations.

On the very afternoon of his scheduled execution, Workman appealed these findings to this Court, and in a 3-2 decision remanding the case to determine whether a writ of error coram nobis should issue, Workman's imminent execution was stayed with little more than an hour remaining. Although the statute of limitations for a writ of error coram nobis is one year from the date of the defendant's conviction, see Tenn. Code Ann. §§ 40-26-105; 27-7-103, the Workman majority held that considerations of due process tolled that limitations period to allow the defendant to have a hearing on the issue. The factual basis for doing so was cited only vaguely as "the circumstances of the case." See Workman, 41 S.W.3d at 101, 103-04.

I dissented from the majority's decision because I believed then, as I do now, that the defendant had been afforded all of the process—and more—that the Constitution commanded was due to him. Prior to Workman, the lynchpin of the due-process tolling analysis was the presence of circumstances beyond the defendant's control which conspired to prevent the defendant from making a timely assertion of rights.[1] After all, only when the defendant is faced with such circumstances does his or her liberty interest become sufficient weighty to overcome the State's countervailing interests in preserving the finality of judgments and preventing stale and groundless claims.

However, when a defendant sits on his or her rights, these governmental interests become even more compelling. The Workman majority did not recognize this fact, and it instead improperly focused its attention upon the defendant's delay in *obtaining* the evidence rather than upon his lengthy delay in bringing the evidence to the attention of a court. See Workman, 41 S.W.3d at 103. The fact remains, however, that Workman delayed seeking a writ of error coram nobis for an *additional thirteen months after* his receipt of this evidence. Even granting for sake of argument that the one-year statute of limitations did not begin running until he actually came into possession of the evidence, Workman's claim would *still* have been well beyond this "new" full limitations period.[2]

In essence, the Court's decision in Workman can stand for three propositions: (1) that due process considerations can toll a statute of limitations even without evidence suggesting that the defendant was prevented by circumstances beyond his or her control from bringing a timely claim; (2) that due process considerations can toll a statute of limitations even when the delay in seeking relief is the result of a tactical decision—the overwhelming indication from the record was that Workman's delay in seeking relief was a tactical decision to delay his execution; and (3) that due process considerations can toll successive "statutes of limitations," so as to permit a defendant as many as three bites at the post-conviction apple—Workman was permitted a hearing eighteen years

---

[1] See Burford v. State, 845 S.W.2d 204 (Tenn. 1992); Seals v. State, 23 S.W.3d 272 (Tenn. 2000); Williams v. State, 44 S.W.3d 464 (Tenn. 2001).

[2] As the majority in this case is careful to note, there is no "due process" statute of limitations for later-arising claims, as the timeliness of filings in individual cases are determined by what is reasonable under the circumstances. However, supposing that the one-year limitations period, without more, would be the presumptive outer limit of reasonableness for a writ of error coram nobis, I still must question the propriety of granting a hearing in the face of a thirteen-month delay. This is especially the case when, as in Workman, no evidence shows that the defendant was prevented from seeking relief due to circumstances beyond his or her control.

after the original statute of limitations had run and after his "new" full statute of limitations, beginning from the discovery of the alleged exculpatory evidence, had run as well. These propositions have no basis whatsoever in our prior decisions,[3] and with them, the Court ushered in dangerous and ominous concepts that may ultimately render a nullity all statutes of limitations for post-conviction remedies.

Our new era of due-process tolling jurisprudence is disconcerting principally because it is without identifiable limits or boundaries. How is any court to know when due process commands that a statute of limitations be tolled after our holding in Workman? Prior to today, one could have reasonably supposed that Workman was merely an aberration in the law, with its result compelled by the fact that the defendant was already in the chamber when the stay of execution was issued. However, by relying upon Workman today, the Court has undermined any such supposition, and it has instead breathed full life into a decision that we should properly put asunder.

I am at a loss to know where this due-process tolling path will end, but I suspect that it will end, if at all, only after miring the law in a state of unmitigated turmoil. As we can already see from a quick review of the cases from the Court of Criminal Appeals, the intermediate court is unclear as to how to apply Workman or what the limits of that case may be. Indeed, given the vagueness of the factors supporting its holding, I believe that attempting a consistent application of due-process tolling after Workman is likely to be less fruitful than answering any one of the imponderables offered in William Blake's timeless poem, "The Tyger."

At the end of the day, our continued reliance on Workman as authority for *any* proposition only serves to further compound our previous error. Plainly stated, Workman was a hastily considered decision—one brought on by the pressures of extraordinary circumstances—and it cannot be justified as a logical or natural progression of prior law. I would therefore prefer that we admit

---

[3] Workman clearly does not follow from our previous decisions addressing due-process tolling. In Burford v. State, 845 S.W.2d 204 (Tenn. 1992), the defendant could not file within the applicable limitations period because his claim, due to no fault of his own, had yet to accrue. In Seals v. State, 23 S.W.3d 272 (Tenn. 2000), the defendant could not file within the applicable limitations period, due to no fault of his own, because of questions of mental incompetence. Even in Williams v. State, 44 S.W.3d 464 (Tenn. 2001), the defendant alleged that he could not file a petition for relief, when due to no fault of his own, he labored for nine months under the impression that he was still being represented by counsel in a direct appeal to this Court.

As the majority in Williams acknowledged, the defendant in that case still had an additional three months within the original limitations period to file a post-conviction petition after he learned that he was no longer being represented by counsel. However, although the record contained sufficient cause for concern, it was insufficiently developed to enable this Court to rule upon whether the timing of the ultimate filing was reasonable. As such, a majority of this Court remanded the case for such a determination. See 44 S.W.3d at 471.

Importantly, however, even an expansive reading of Williams reveals that it is not at all similar to the situation presented in Workman. Nothing in Workman suggested that the tolling of the statute of limitations for an additional thirteen months was reasonable under any set of circumstances presented in that case. Indeed, even assuming that Workman was somehow granted an additional twelve months to file after his discovery of the alleged exculpatory evidence—a proposition which I do not grant—nothing in that record suggested that he was entitled to the benefit of a extra month beyond that period in which to seek relief.

our analytical mistakes in Workman and either overrule that decision or consign its fate to the realm of legal oblivion.

## II. Application of *Workman* to this Case

In the case before us today, we are again faced with the question of whether due process considerations allow a defendant to late-file a post-conviction petition after coming into possession of alleged exculpatory evidence. The majority concludes, after appropriately distinguishing Wright, that a defendant may do so, provided that any delay in bringing the petition is reasonable under the circumstances. As I stated earlier, I fully concur with this proposition. However, the majority then concludes that the sixteen-month delay in this case is reasonable under the circumstances, if only because this time period "is not substantially different than the period in Workman."[4] It is with this conclusion that the majority and I must part ways.

Although the majority is correct that this case is not "substantially different" from Workman, this fact should be a basis for *denying* the defendant's petition, not for allowing it to proceed. Just as the defendant in Workman unreasonably sat on his rights as a tactical decision to delay his execution, so too has the defendant in this case been guilty of an unreasonable delay in asserting his rights. Indeed, like Workman, the defendant here came into possession of evidence that he believed warranted a new trial, but he did not seem at all interested in seeking relief. He did not, for example, file a petition for relief within a week, within a month, or even within a full year of his discovery of this evidence. Instead, he waited nearly a *year and a half* to bring this evidence to the attention of a court. Again, even assuming, as I did in Workman, that this defendant was somehow granted an additional twelve months after his discovery of the alleged exculpatory evidence to file a petition for relief, nothing here suggests that he is entitled to an extra *four* months beyond that period in which to file. Because of this considerable and lengthy delay, I do not agree that this defendant's liberty interests are so weighty that "due process" considerations must now intervene to assist him in his quest for a new hearing.[5]

Therefore, contrary to the majority's holding, I find no basis for holding that a sixteen-month delay in seeking relief is reasonable under the circumstances of this case. It does not appear that the defendant was prevented from filing his petition for post-conviction relief due to any circumstances beyond his control; rather, it appears that he was merely dilatory in asserting his rights—a fact which

---

[4] As the majority notes, Sample received the allegedly exculpatory statements and reports in September of 1993. Nearly sixteen months later, in January of 1995, he filed his post-conviction petition based on this evidence.

[5] I take no issue with the majority's conclusion the statute of limitations was tolled during the time that the State failed to disclose the allegedly exculpatory evidence and reports. As in any case in which the State withholds evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963), the weight of the State's interests in finality and in preventing stale claims is diminished vis-à-vis the defendant's interest in personal liberty. However, once having received this evidence from the State, it was incumbent upon the defendant to then assert his rights in a timely and reasonable manner. The longer the delay in asserting these rights, the more that the defendant's interests in liberty must, of necessity, diminish.

does not properly entitle him to due-process tolling considerations. In the end, the majority's reliance on <u>Workman</u> as authority for its holding today is disheartening, as we have now taken a second—but quite critical—step in permitting "due process considerations" to erase the significance of statutes of limitations in the post-conviction context.

For these reasons, I respectfully dissent from the Court's holding that Defendant Sample's filing for post-conviction relief is timely.

_____
WILLIAM M. BARKER, JUSTICE