# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
June 15, 2004 Session

## RAYMOND ROGER JONES  v.  STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Washington County**
**No. 21822      Robert E. Cupp, Judge**

---

**No. E2003-00580-CCA-R3-PC - December 3, 2004**

---

Petitioner, Raymond Roger Jones, appeals the Washington County Criminal Court's dismissal of his *pro se* combined motion to reopen his post-conviction petition, petition for writ of error coram nobis, and petition for DNA analysis. Petitioner was convicted by a jury in the Knox County Criminal Court of two counts of first degree murder.  He received consecutive life sentences.  This Court affirmed Defendant's convictions and sentences on direct appeal.  *See State v. Jones*, 735 S.W.2d 803 (Tenn. Crim. App. 1987).  Petitioner filed a petition for post-conviction relief in the Washington County Criminal Court.  The trial court dismissed the petition, and this Court affirmed.  *See Raymond Roger Jones v. State*, No. 03C01-9102-CR-00068, 1991 Tenn. Crim. App. LEXIS 584, (Tenn. Crim. App. at Knoxville, July 26, 1991), *perm. to app. denied* (Tenn. 1992).  On June 22, 2001, Petitioner filed a *pro se* motion to reopen his post-conviction petition, alleging that the United States Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), established a new rule of constitutional law requiring retroactive application to his case.  Petitioner subsequently filed a supplemental request for DNA analysis.  The trial court dismissed the motion and denied Petitioner's request for DNA Analysis.  Petitioner appeals.  After reviewing the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOHN EVERETT WILLIAMS, JJ., joined.

Janie L. Lindamood, Johnson City, Tennessee, for the appellant, Raymond Roger Jones.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; Joe C. Crumley, Jr., District Attorney General; and Steve Finney, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

**Factual Background**

The following factual background is taken from this Court's opinion in Petitioner's direct appeal. *State v. Jones*, 735 S.W.2d 803 (Tenn. Crim. App. 1987). Stanley and Jean Jones, Petitioner's brother and sister-in-law, disappeared from their home in Washington County on Friday, August 13, 1982. Stanley owned 35 acres of property, adjacent to where Petitioner lived, which he received when the farm on which Petitioner and his brothers were raised was divided among Petitioner, Stanley, and their brother Clyde. An empty grave was found beneath the floor of an abandoned schoolhouse located on that property. Petitioner's fingerprints were discovered on a flashlight, which was found on the schoolhouse floor. On the Sunday following the Friday on which the victims were last seen, Petitioner's neighbor heard voices and a gunshot coming from between Petitioner's house and the schoolhouse on Stanley's property. The neighbor heard a woman's voice screaming, "Help! Help! Please, help me!" Then she heard the voices of two people talking. She recognized one of the voices as Petitioner's. Later that day, the neighbor saw Stanley's orange Datsun station wagon parked between the back door of Petitioner's house and his garage. A couple also saw the station wagon parked in front of Petitioner's house with the rear hatch open. The station wagon was seen at Petitioner's house again on Tuesday, but it was not there on Wednesday. The station wagon was later found abandoned at the Empire Motor Lodge in Abingdon, Virginia.

A crime lab analysis revealed blood stains on the carpet, the kitchen floor, a wicker table, and a chair in the victims' home. Blood stains on the kitchen floor matched Stanley's blood type, which was type "A," and although no evidence of Jean's blood type was presented, a sanitary napkin found in the trash had type "O" blood, which was the type found in the carpet. A bullet hole was found in a table leg. Two lead bullet fragments were found in the carpet. A spent bullet was inside a boot, and another was embedded in the kitchen wall.

Chester Allen, a friend of Petitioner, testified at trial as to several incriminating statements that Petitioner made to him. He testified that on the Monday following the last day that the victims were seen alive, Petitioner asked him to keep a Walther P-38 pistol for him. Petitioner told Mr. Allen, "There's a good chance that Stanley won't show up again," and referring to a conversation he had with a third party, "You know, he remembered that bastard, Stanley." Petitioner told Mr. Allen that he had taken the pistol to a gunsmith in Johnson City for repairs and that he had used another man's name. The gunsmith had given Petitioner ammunition for the pistol. Mr. Allen saw Petitioner clean the pistol, which was loaded with solid copper jacket bullets. Mr. Allen reported the serial number of the pistol to the sheriff's department. Petitioner hid the pistol in Mr. Allen's barn, but Mr. Allen requested that Petitioner retrieve it the next day, and Petitioner did so. Petitioner told Mr. Allen, "Let me tell you, there is nothing to be worried about," and "Everything's been taken care of." Referring to the victims, Petitioner said, "They are not coming back now or never," and "there's nothing to be afraid of." Mr. Allen asked Petitioner if the gun was involved in their disappearances, and Petitioner responded, "If it didn't, why would I want to be gettin' rid of it?"

Mr. Allen cooperated with investigators and wire-tapped a conversation with Petitioner. In that conversation, Petitioner told Mr. Allen that he had wiped any fingerprints from the gun and the box it was in and buried the box with the gun inside in a barn stable. He also told Mr. Allen that Stanley was going to take his place from him. He said, "I cannot say that I don't hate this thing happened – that Stanley's gone." Petitioner said that Stanley and Jean had gone on a permanent vacation. Petitioner said, "When it really comes down to your family . . . everybody has a breaking point." Investigators found the pistol that Petitioner had buried. The gunsmith identified it, and a ballistic expert testified that the bullets found in the boot and the wall of the victims' home were fired from it.

The evidence showed that Petitioner had defaulted on a loan on which his brothers Stanley and Clyde had co-signed. Stanley had obtained a judgment against Petitioner and was contemplating a foreclosure on Petitioner's home. A critical stage in the lawsuit by Stanley against Petitioner occurred in May, 1982, which is when Petitioner took the pistol to be repaired.

There was also evidence that the victims had money in active bank accounts. They had bought and stored roofing materials, intending to re-roof their 100-year-old log house. The victims had a white pickup truck that was being repaired at the time of their disappearance. Jean had bought an airline ticket for a trip to Denver, which arrived in the mail after her disappearance. Jean's sister, who had visited Stanley and Jean in July, 1982, testified that Stanley and Jean had a "real good" relationship. Stanley had been negotiating the sale of some cattle, which was scheduled to occur on Saturday, August 14, 1982, but he did not arrive for the sale. Tom Allen, the buyer of the cattle, had given Stanley a check, which Stanley never cashed.

After Petitioner's arrest in September, 1982, the bodies of Stanley and Jean Jones were discovered. However, evidence concerning the discovery of their bodies was suppressed upon motion of Petitioner.

On July 28, 1984, Petitioner was convicted by a Knox County jury of two counts of first degree murder. He was sentenced to life imprisonment for each offense, and the sentences were ordered to be served consecutively. His convictions and sentences were affirmed on direct appeal. *Jones*, 735 S.W.2d at 805. Petitioner filed a petition for post-conviction relief on August 3, 1987. Petitioner later filed an amended petition. On appeal, this Court affirmed the trial court's denial of post-conviction relief. *Jones v. State*, *supra*.

On June 22, 2001, Petitioner filed a *pro se* motion to reopen his petition for post-conviction relief, pursuant to Tenn. Code Ann. section 40-30-117(a)(1), asserting that Tennessee's consecutive sentencing statute violates a new constitutional right established in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). The trial court summarily dismissed Petitioner's motion. Petitioner subsequently filed a supplemental request for DNA analysis; petition for *writ of error coram nobis*; and petition for declaratory judgment. The trial court dismissed the post-conviction allegations as time-barred. The trial court also concluded that Petitioner's request for DNA analysis did not meet the statutory requirements of Tenn. Code Ann. section 40-30-304(1).

In an order, a panel of this Court dismissed Petitioner's appeal from the trial court's denial of his motion to reopen his post-conviction petition under Rule 3 of the Tennessee Rules of Appellate Procedure. An appeal as of right is not available for review of a lower court's denial of a motion to reopen a petition for post-conviction relief. Tenn. R. App. P. 3(b); *Gary Wallace v. State*, No. W2002-01832-CCA-R3-PC, 2003 Tenn. Crim. App. LEXIS 566, (Tenn. Crim. App. at Jackson, June 26, 2003), *no perm. to app. filed.* However, this Court concluded that Petitioner's request for DNA analysis was properly preserved for appeal. Therefore, the only issue for our review is whether the trial court properly denied Petitioner's request for DNA analysis under the Post-Conviction DNA Analysis Act.

The Post-Conviction DNA Analysis Act of 2001 provides, "[A] person convicted of and sentenced for the commission of first degree murder . . . may at any time, file a petition requesting the forensic DNA analysis of any evidence that is in the possession or control of the prosecution." Tenn. Code Ann. § 40-30-303. After the State has an opportunity to respond, the trial court must order DNA analysis if:

> (1) A reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis;
>
> (2) The evidence is still in existence and in such a condition that DNA analysis may be conducted;
>
> (3) The evidence was never previously subjected to DNA analysis or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis;
>
> (4) The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

Tenn. Code Ann. § 40-30-304. "The failure to meet any of the qualifying criteria is, of course, fatal to the action." *William D. Buford v. State*, No. M2002-02180-CCA-R3-PC, 2003 Tenn. Crim. App. LEXIS 370 (Tenn. Crim. App. at Nashville, April 24, 2003), *perm. to app. denied* (Tenn. 2003).

In his petition for DNA analysis, Petitioner alleges that the results of DNA testing on 22 trial exhibits would "show the identity of the real murderer and prove Petitioner's innocence." Those items, which Petitioner alleges are in the possession of the State, include, among other things, a flashlight, pretzels, a pistol, the victim's blood, a chair, bullet fragments, boots, a paper bag, a piece of linoleum, carpet fibers, a sanitary napkin, and a wicker end table.

The trial court found that even if the 22 trial exhibits on which Petitioner requested DNA analysis were amenable to testing, the results would not negate the overwhelming evidence at trial

of Petitioner's guilt. In its written order summarily dismissing the petition for DNA analysis, the trial court stated as follows:

> Assuming, arguendo that DNA analysis could be conducted on each of the items, would this show the real identity of the murderer, or murderers in this case? This Court does not believe so. The listed items could contain DNA from numerous individuals, simply because of the nature of the item. As an example, the bag containing pieces of carpet could have the DNA of the installer or installers, the people who manufacture the carpet, the salesman of the carpet and the people within the household, including the family, along with visitors. This argument would be true as to any item listed by the Petitioner.
>
> Again, assuming that DNA could be obtained from any or all of these items, how would the Petitioner propose to match the DNA to all these unknown persons. To grant DNA analysis of these items would be nothing more than an exercise in futility that this court does not believe that the statute contemplates.
>
> Moreover, and more importantly, this court finds there is a threshold provision for T.C.A. 40-30-404(1) which requires "a reasonable probability exists that the Petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis."
>
> Reading the opinion from the Petitioner's original appeal reveals overwhelming evidence from which a jury could have concluded the Petitioner guilty of these crimes. **Incredibly, the most damning evidence of his guilt was evidence that was ruled inadmissible**. The Petitioner, while incarcerated made a statement to another inmate that lead [sic] the Washington County Sheriff's Department to the discovery of the buried bodies of the Petitioner's brother and sister-in-law. In one of the graves they also found a tube of bathtub caulk. This lead [sic] the investigators to return to the victims' home where they found a spent bullet that appeared to have been fired from the murder weapon. This bullet, and the hole it produced, had been overlooked during prior inspections of the house as it was embedded in a wall, and caulk was used to mask the hole.
>
> **Although all this evidence was inadmissible at trial, including discovery of the bodies, this Court can consider the evidence to reach certain conclusions regarding DNA analysis**. In this regard, it would be proper to conclude, under the facts of this case, that the only person who would know where the bodies were buried would be the killer. Therefore, it would be immaterial how much DNA one could garner from the evidence in this case, as it would be literally impossible for the Petitioner to show "a reasonable probability exists that the Petitioner would not have been prosecuted or convicted if <u>exculpatory results had been obtained through DNA analysis</u>." In other words, because the bodies were

-5-

discovered where the Petitioner directed, there simply can be no exculpatory
evidence obtained by D.N.A. [sic]. Therefore, this argument is without merit.

(Bold emphasis added).

First, Petitioner relies upon Rule 28 of the Rules of the Supreme Court to argue that the trial court erred by summarily dismissing the petition without allowing Petitioner to amend the petition after appointment of counsel. The rule states, "No pro se petition shall be dismissed *for failure to follow the prescribed form* until the court has given petitioner a reasonable opportunity to amend the petition with the assistance of counsel." Tenn. Sup. Ct. R. 28 §6(B)(4)(b) (emphasis added). Tennessee Code Annotated section 40-30-106(d), dealing with the preliminary consideration of a post-conviction petition, states:

> The petition must contain a clear and specific statement of all grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings. Failure to state a factual basis for the grounds alleged shall result in immediate dismissal of the petition. If, however, the petition was filed pro se, the judge may enter an order stating that the petitioner must file an amended petition that complies with this section within fifteen (15) days or the petition will be dismissed.

Tenn. Code Ann. § 40-30-106(d).

In this case, the trial court did not dismiss Petitioner's *pro se* petition for failure to follow the prescribed form. The trial court dismissed the petition because, the trial court concluded, Petitioner did not meet the threshold showing required under section 40-30-304(1) of the Post-Conviction DNA Analysis Act.

Petitioner also argues that the trial court should not have considered evidence that was deemed inadmissible at trial in determining that a reasonable probability did not exist that Petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis. *See* Tenn. Code Ann. § 40-30-304(1). The State argues that the trial court properly considered all of the facts and circumstances of Petitioner's case. The State also argues that even without consideration of the excluded evidence that Petitioner, after his arrest, directed law enforcement to the location of the victims' bodies, any exculpatory results from DNA testing would not have affected the prosecution or conviction in this case.

In determining whether to grant or deny a post-conviction petition for DNA analysis, the trial court must consider all the available evidence, including the evidence presented at trial and any stipulations of fact made by either party. *Willie Tom Ensley v. State*, No. M2002-01609-CCA-R3-PC, 2003 Tenn. Crim. App. LEXIS 335 (Tenn. Crim. App. at Nashville, April 11, 2003), *no perm. to app. filed*. The trial court may also consider the opinions of this Court on direct appeal of the

petitioner's conviction or the appeals from prior post-conviction or habeas corpus actions. *Id*. Moreover, "[a] determination of the evidence and surrounding circumstances is necessary to evaluate whether exculpatory results would have prevented prosecution or conviction or would have resulted in a more favorable verdict or sentence." *State v. David I. Tucker*, No. M2002-02602-CCA-R3-CD, 2004 Tenn. Crim. App. LEXIS 46 (Tenn. Crim. App. at Nashville, January 23, 2004), *no perm. to app. filed*.

There are no Tennessee appellate court decisions holding that a post-conviction court may consider evidence that was excluded at trial in making this determination, and we decline to do so here. We conclude that consideration of such evidence is not appropriate. Nevertheless, we agree with the trial court's conclusion that any exculpatory results of DNA testing would not have precluded Petitioner's prosecution or conviction.

In *Jack Jay Shuttle v. State*, No. E2003-00131-CCA-R3-PC, 2004 Tenn. Crim. App. LEXIS 80 (Tenn. Crim. App. at Knoxville, February 3, 2004), *perm. to app. pending*, a panel of this Court reversed the trial court's denial of the petitioner's request for DNA analysis of blood underneath the victim's fingernails and on the petitioner's jeans despite trial testimony by the petitioner that he killed the victim. In Tennessee, the petitioner is not required to show that identity was an issue in order for a court to order DNA testing. *William D. Buford v. State*, *supra*. In *Shuttle*, this Court stated, "for purposes of the Act, we must assume that DNA testing will reveal exculpatory evidence." In another recent case, *Carl E. Saine v. State*, No. W2002-03006-CCA-R3-PC, 2003 Tenn. Crim. App. LEXIS 1135 (Tenn. Crim. App. at Jackson, December 15, 2003), *perm. to app. denied* (Tenn. 2004), this Court affirmed the trial court's denial of DNA testing. The petitioner, convicted of assault and rape, requested DNA analysis of spermatozoa found on the victim's torn panties. The petitioner admitted that he assaulted the victim, but argued that he left the victim unconscious, and someone else could have then entered the room and raped the victim. A panel of this Court noted that the victim had identified the petitioner as her rapist and other evidence at trial corroborated her testimony regarding the rape.

In the direct appeal of Petitioner's convictions, a panel of this Court concluded that the circumstantial evidence against Petitioner was sufficient to support his convictions. *State v. Jones*, 735 S.W.2d at 809. The Court noted, "Perhaps the most damning evidence against the appellant was the testimony of his friend Chester Allen." *Id*. at 807. As noted *supra*, Mr. Allen testified that Petitioner made several incriminating statements to him. Mr. Allen also gave testimony regarding a pistol that Petitioner hid in Mr. Allen's barn, which investigators later located.

Petitioner states in his brief, "As a matter of law, there is always evidence of guilt, beyond a reasonable doubt, in every criminal conviction. . . ." The determination to be made is whether "[a] reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis." Tenn. Code Ann. § 40-30-304(1). In this case, DNA analysis might reveal the presence or absence of Petitioner's DNA on any, all or none of the items that Petitioner requests be submitted for testing. However, we cannot see how any results of DNA testing would have had a favorable affect on the prosecution or conviction of

Petitioner. We agree with the trial court that the presence of other persons' DNA on the items Petitioner requests be analyzed would not have a favorable effect on Petitioner's prosecution or conviction.

Petitioner raises two additional issues on appeal, attorney misrepresentation and unconstitutional indictment and jury instructions. The trial court concluded that those allegations are statutorily time-barred. In its order denying the petition, the trial court quoted Tenn. Code Ann. section 40-30-102(b)(1) and stated that "Petitioner has failed to show that these two allegations are 'based upon a final ruling of an Appellate Court [sic] establishing a Constitutional [sic] right that was not recognized as existing at the time of trial, if retroactive [sic] application of that right is required.'"

By statute, a petitioner may file only one petition for post-conviction relief. Tenn. Code Ann. § 40-30-102(c). Following Petitioner's convictions, he sought post-conviction relief. This Court affirmed the trial court's denial of relief. *See Raymond Roger Jones v. State*, No. 03C01-9102-CR-00068, 1991 Tenn. Crim. App. LEXIS 584, (Tenn. Crim. App. at Knoxville, July 26, 1991), *perm. to app. denied* (Tenn. 1992). The trial court dismissed a second post-conviction petition as time-barred, and this Court affirmed on appeal. *See Raymond Roger Jones v. State*, No. E1999-00572-CCA-R3-PC (Tenn. Crim. App. at Knoxville, November 10, 1999), *perm. to app. denied* (Tenn. 2000). While Petitioner's second petition was pending, he moved to reopen his first post-conviction proceeding, alleging constitutional claims based upon *Sandstrom v. Montana*, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979), and *State v. Brown*, 836 S.W.2d 530 (Tenn. 1992). The trial court denied the motion, and this Court denied an appeal from the trial court's action. *See Raymond Roger Jones v. State*, No. 03C01-9801-CR-00007 (Tenn. Crim. App. at Knoxville, March 17, 1998), *perm. to app. denied* (Tenn. 1999).

Finally, Petitioner argues that the trial court erred by not considering his petition for *writ of error coram nobis* under *Workman v. State*, 41 S.W.3d 100 (Tenn. 2001). Under very particular circumstances, a defendant may file for a *writ of error coram nobis*. *See* Tenn. Code Ann. § 40-26-105. This remedy is available only when newly discovered evidence "may have resulted in a different judgment, had it been presented at the trial." *Id.*; *see also State v. Hart*, 911 S.W.2d 371, 374 (Tenn. Crim. App. 1995). The petition must contain:

(a) the grounds and the nature of the newly discovered evidence,

(b) why the admissibility of the newly discovered evidence may have resulted in a different judgment if the evidence been admitted at the previous trial,

(c) the petitioner "was without fault in failing to present" the newly discovered evidence at the appropriate time, and

(d) the relief sought by the petitioner.

*Hart*, 911 S.W.2d at 374-75 (citations omitted).

The State responds that the petition is untimely. A defendant has one year from the date of the final judgment in which to file a petition for *writ of error coram nobis*. Tenn. Code Ann. § 27-7-103. Petitioner's request for relief comes almost 18 years after his convictions. Petitioner asserts that due process requires a tolling of the statute of limitations under *Workman v. State*, 41 S.W.3d 101 (Tenn. 2001). As we stated above, on January 8, 2002, Petitioner filed a *pro se* pleading styled "Amendment and Supplement to Petition for Post-Conviction Relief; Petition for Writ of Error Coram Nobis; Petition for Declaratory Judgment; and Petition for DNA Analysis." However, the pleading does not contain even a bare allegation of what "subsequently or newly discovered evidence" entitles him to relief. Therefore, petitioner has not shown in his petition any grounds for relief that would justify the tolling of the statute of limitations.

## CONCLUSION

The judgments of the trial court are affirmed.

_____
THOMAS T. WOODALL, JUDGE