IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
June 5, 2007 Session

**STATE OF TENNESSEE v. GLENN BERNARD MANN**

**Appeal from the Circuit Court for Dyer County**
**No. C93-337, C93-338     Lee Moore, Judge**

---

**No. W2006-01867-CCA-R3-CO  - Filed August 6, 2007**

---

The petitioner, Glenn Bernard Mann, appeals the trial court's denial of his petition for writ of error coram nobis.  Following our review of the record, parties' briefs and applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J.C. McLin, J., delivered the opinion of the court, in which John Everett Williams and Alan E. Glenn, JJ., joined.

Marty B. McAfee, Memphis, Tennessee, for the appellant, Glenn Bernard Mann.

Robert E. Cooper, Jr., Attorney General and Reporter; Elizabeth T. Ryan, Assistant Attorney General; C. Phillip Bivens, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**PROCEDURAL HISTORY**

In 1994, the petitioner was sentenced to death by a jury for the premeditated first degree murder of Annie Lou Wilson, a sixty-two-year-old widow.  He was also convicted and sentenced to twenty-five years for aggravated rape and six years for aggravated burglary of the same victim.  His convictions and sentences were affirmed on direct appeal by both this court and the Tennessee Supreme Court.  *See State v. Glenn Bernard Mann*, No. 02C01-9502-CC-00046, 1996 WL 465764 (Tenn. Crim. App., at Jackson, Aug. 16, 1996); *State v. Mann*, 959 S.W.2d 503 (Tenn. 1997) *reh'g denied* (Feb. 17, 1998).  The United States Supreme Court denied certiorari.  *Mann v. Tennessee*, 524 U.S. 956 (1998).  Thereafter, the petitioner pursued post-conviction relief which was denied by the post-conviction court.  On appeal, this court affirmed the post-conviction court's denial of post-conviction relief.  *See Glen Bernard Mann v. State*, No. W2002-00260-CCA-R3-PD, 2003 WL 22319581 (Tenn. Crim. App., at Jackson, Oct. 09, 2003), *perm. app. denied* (Tenn. Mar. 08, 2004).  On July 13, 2005, the petitioner filed a motion to reopen his post-conviction petition; whereupon,

this court affirmed the dismissal of the petition by order entered January 11, 2006. *See Glen Bernard Mann v. State*, No. W2005-02453-CCA-R28-PD (Tenn. Crim. App, at Jackson, Jan. 11, 2006).

On February 23, 2006, the petitioner filed the instant petition for writ of error coram nobis, alleging that one of his attorneys was operating under an actual conflict of interest when representing him. Specifically, the petitioner alleged that, soon after the body of Ms. Wilson was discovered, the police located and questioned Ms. Wilson's nephew, Tim Armstrong, as a suspect. Although Mr. Armstrong was not charged with the murder of his aunt, Ms. Wilson, he was later arrested for the murder of another relative, Theresa Patterson. Attorney Lyman Ingram was appointed to represent Mr. Armstrong in the matter. Subsequently, on May 16, 1994, Mr. Armstrong entered a guilty plea to the first degree murder of Ms. Patterson, and on July 1, 1994, he was sentenced to life imprisonment. The petitioner's murder trial began on May 31, 1994. Attorney Ingram was co-counsel with Charles Kelly, the petitioner's lead counsel. The petitioner further alleged that co-counsel Ingram neither revealed that Mr. Armstrong was an early suspect in the murder of Ms. Wilson, nor revealed that he represented Mr. Armstrong in a different murder case. The petitioner asserted that this newly discovered evidence warranted a new trial. In response, the state filed a motion in opposition to the petitioner's motion. In its motion, the state asserted that the petition was time-barred and failed to raise a cognizable claim for coram nobis relief.

On August 25, 2006, an evidentiary hearing was held. At the hearing, the petitioner's lead counsel, Charles Kelly, testified that he represented the petitioner in his trial for the murder of Annie Lou Wilson. He was aware that early in the investigation of Ms. Wilson's murder, other suspects had been investigated. However, lead counsel did not seriously consider these other suspects because the petitioner gave a detailed confession to police, which corroborated other evidence in police possession. As such, lead counsel did not pursue a theory of defense involving a third party suspect. Lead counsel admitted that he did not know that Tim Armstrong had been initially arrested as a suspect by police and that the police had taken a blood sample from him. However, he recalled that he reviewed a fingerprint report from the Tennessee Bureau of Investigation (TBI) where the fingerprints at the crime scene were compared to those of the petitioner, Kevin Reeves and Tim Armstrong. The TBI report was inconclusive as no fingerprint identification match was made of any of the suspects including the petitioner.

Co-counsel, Lyman Ingram, testified that prior to his current employment as the Juvenile Commissioner and Referee for Dyer County, he worked for the Public Defender's Office. In 1994, he was appointed to represent Tim Armstrong in a capital murder case where Armstrong was charged with killing his aunt, Theresa Patterson. Tim Armstrong had lived with Ms. Patterson, and he had confessed to killing her, saying he had a severe crack addiction and was out of his mind at the time. Co-counsel recalled that he successfully negotiated a plea for life imprisonment for Tim Armstrong, which was executed in May 1994.

Co-counsel testified that he was appointed to assist lead counsel in the petitioner's case in April 1994. Co-counsel explained that he was appointed to the case for the specific purpose of convincing the petitioner to accept a plea offer of life imprisonment. Co-counsel stated that he did

not participate in the investigation or witness preparation of the petitioner's case. Co-counsel stated that he did not know that Tim Armstrong had once been a suspect in the murder of Ms. Wilson. Co-counsel specifically denied seeing the TBI report in which Tim Armstrong's fingerprints were subjected to analysis in connection with Ms. Wilson's murder.

Chris Armstrong, an investigator with the Federal Public Defender of Middle Tennessee, testified that he interviewed Tim Armstrong in connection with his office's representation of the petitioner. During the interview, Tim Armstrong told him that the police picked him up in Memphis within thirty hours of Ms. Wilson's murder and collected a blood sample from him. According to Tim Armstrong, he was Ms. Wilson's nephew. He was developed as a suspect because Ms. Wilson's niece, who discovered Ms. Wilson's body, told police that he was supposed to have visited from Memphis that day. Tim Armstrong told police that he did not visit his aunt, but instead, he stayed in Memphis. He was then released by police.

Investigator Chris Armstrong recounted that Tim Armstrong murdered another aunt, Ms. Patterson, not long after he was arrested as a suspect in Ms. Wilson's murder. Tim Armstrong eventually confessed to murdering Ms. Patterson. At the time, Tim Armstrong said he was "hopelessly addicted to crack." Investigator Chris Armstrong also noted a psychological evaluation report which indicated that Tim Armstrong had had suicidal and homicidal idiations about eight weeks before Ms. Wilson was murdered. Investigator Chris Armstrong acknowledged that the fact Tim Armstrong had been a suspect was evidence available at the time of the petitioner's trial.

After the hearing, the circuit court denied the petitioner's petition for writ of error coram nobis, finding that the petitioner failed to carry his burden in presenting any newly discovered evidence.

**ANALYSIS**

The writ of error coram nobis is an "extraordinary procedural remedy," filling only a "slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999) (citation omitted). "The purpose of this remedy is to bring to the attention of the court some fact unknown to the court which if known would have resulted in a different judgment." *Freshwater v. State*, 160 S.W.3d 548, 553 (Tenn. Crim. App. 2004) (quoting *State v. Hart*, 911 S.W.2d 371, 374 (Tenn. Crim. App. 1995)). The decision to grant or deny a petition for writ of error coram nobis rests within the sound discretion of the trial court. *Hart*, 911 S.W.2d at 375. A petition for writ of error coram nobis must relate: (1) the grounds and the nature of the newly discovered evidence; (2) why the admissibility of the newly discovered evidence may have resulted in a different judgment had the evidence been admitted at the previous trial; (3) that the petitioner was without fault in failing to present the newly-discovered evidence at the appropriate time; and (4) the relief sought by the petitioner. *Freshwater*, 160 S.W.3d at 553. A petition for writ of error coram nobis relief must be filed within one year of the time judgment becomes final in the trial court. *See* Tenn. Code Ann. § 27-7-103. The one year statute of limitations may be tolled only when necessary not to offend due process requirements. *See Workman v. State*, 41 S.W.3d 100, 103 (Tenn. 2001).

Based on the record, it is clear that the petitioner's petition was filed several years after the statute of limitations had expired. It is also clear that the state raised the untimeliness of the petition in its motion in opposition to the petition for writ of error coram nobis. *See Harris v. State*, 102 S.W.3d 587, 593 (Tenn. 2003) (state bears the burden of raising the bar of the statute of limitations as an affirmative defense). Furthermore, the petitioner has failed to allege any ground for which the statute of limitations should be tolled. *See Mixon*, 983 S.W.2d at 668. Therefore, we agree with the state that the petition is untimely.

However, regardless of the untimeliness of the petition, the petitioner failed to present newly discovered evidence that may have resulted in a different judgment had it been presented at trial. Tenn. Code Ann. § 40-26-105; *Workman*, 41 S.W.3d at 104. The petitioner's claim that his co-counsel operated under a conflict of interest during his trial is not cognizable in a petition for writ of error coram nobis because the petitioner's allegation, if proved, would constitute ineffective assistance of counsel which the writ of error coram nobis is not designed to remedy. *See, e.g.*, *Kenneth C. Stomm v. State*, No. 03C01-9110-CR-00342, 1992 WL 97081, at *1 (Tenn. Crim. App., at Knoxville, May 12, 1992) ("The [coram nobis] proceeding is confined to errors outside the record and to matters which were not and could not have been litigated at trial, the motion for new trial, appeal, or upon post-conviction petition."). Furthermore, the petitioner's claim, if proved, does not exonerate the petitioner of guilt in the first degree murder case. Accordingly, we conclude that the circuit court properly denied relief sought by the petitioner.

_____
J.C. McLIN, JUDGE