IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 17, 2013

**JAMES E. WILLIAMS v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Coffee County**
**No. 39617    Vanessa A. Jackson, Judge**

_____

**No. M2012-02151-CCA-R3-PC - Filed May 15, 2013**

_____

In 1987, the Petitioner, James E. Williams, was convicted of armed robbery, assault with intent to commit first degree murder, and aggravated kidnapping. The trial court sentenced him to an effective sentence of life plus seventy-five years. This Court affirmed the Petitioner's convictions and sentence on appeal. *State v. James E. Williams*, No. 88-172-III, 1988 WL 138843, at *1 (Tenn. Crim. App., at Nashville, Dec. 30, 1988), *perm. app. denied* (Tenn. Apr. 3, 1989). During the next sixteen years, the Petitioner filed two petitions for post-conviction relief and a petition for a writ of error coram nobis, all of which were denied by the post-conviction court. The Petitioner appealed each denial separately, and this Court affirmed the trial court each time. In 2012, the Petitioner filed a second petition for a writ of error coram nobis in which he presented multiple allegations. The coram nobis court summarily dismissed the petition. On appeal, the Petitioner alleges that the coram nobis court erred when it dismissed his petition without a hearing, contending that he presented in his petition newly discovered evidence. After a thorough review of the record and applicable authorities, we affirm the coram nobis court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JAMES CURWOOD WITT, JR., JJ., joined.

James E. Williams, Pro Se, Pikeville, Tennessee.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Assistant Attorney General; and C. Michael Lane, District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

# I. Facts
## A. Background and Direct Appeal

In our opinion in the Petitioner's direct appeal of his convictions and sentence, we summarized the facts presented at trial as follows:

> There is no basic dispute concerning the facts of the offense. Just after 9:00 one morning, Dorothy Shelton drove the family's 1986 Ford van to a Manchester filling station, where she bought gas and ran the vehicle through a self-service car wash, while her five-year-old daughter, Melissa, sat inside the van. As Shelton finished washing the van, a lone man approached her with a gun aimed at her chest and told her not to move. Frightened, Shelton threw up her hands. As she did so, she heard the clicking sound of the trigger being pulled on the gun. She turned and ran away. Behind her, she heard the gunman yell, "Don't run!" She also heard one or two more clicks from the gun, but no shots were actually fired.
>
> Shelton ran to a nearby bank building and, hysterical, told employees there that a man with a gun had her daughter at the filling station. Someone called the police, but even before the officers arrived, a bank employee saw a little girl running through the bank parking lot, back toward the car wash. It was Melissa, who had fled on foot from the van, after the robber had driven a block or two from the car wash. He presumably left the neighborhood in a "drop car," taking with him Dorothy Shelton's purse. Left behind on the seat of her van was a .38 pistol. The hammer on the pistol was pulled back and there were four bullets in it.
>
> The next day, Dorothy Shelton's purse was found at a car wash in Murfreesboro. That same day, Shelton was asked to go through two mug shot albums in an effort to identify her assailant. She picked out two pictures from the albums. Both were of the [Petitioner]. Later that day, she attended a lineup at police headquarters and positively identified the [Petitioner] from a group of five men, both visually and by the sound of his voice, which she described at trial as "distinctive." She also made an in-court identification of the [Petitioner].
>
> Dorothy Shelton's identification testimony was corroborated by that of 11-year-old Steven Trail, a neighborhood boy who had seen a man walking near the car wash between 9:25 and 9:30 on the morning of the robbery. He gave police a detailed description of the man and later testified that he was

"scary-looking." When asked to look at an array of six photographs, Steven immediately and emphatically identified the [Petitioner]. He also picked [the Petitioner] out of a police lineup. At trial, Steven identified a shirt taken from the [Petitioner] as the one worn by the man he saw behind the car wash. He also made an in-court identification of [the Petitioner].

The [Petitioner] presented an alibi defense. He testified that he was at work all day at the Shahan Nursery, some 12-13 miles from the scene of the crime. Three alibi witnesses-his employer, a co-worker, and his wife, who also worked at the nursery with him-testified that Williams was at work on the day of the robbery. None of them, however, could account for the [Petitioner]'s exact whereabouts during a one or two hour period on the morning in question.

In fact, the [Petitioner]'s wife had told police at the time of his arrest that she "lost sight of him" for an hour or so and that "it's possible he could have went to town and [she] didn't know it." She also told police that she and her husband had driven to Murfreesboro the day after the robbery and had used the same car wash where Dorothy Shelton's purse was found a short time later. At trial, she said that she made these statements to police because they put her "under pressure" and told her what to say.

*Williams*, 1988 WL 138843, at *1-2.

Based upon this evidence, the jury convicted the Petitioner of armed robbery, assault with intent to commit first degree murder, and aggravated kidnapping. *Id.* at *1. The trial court imposed sentences of life, 25 years, and 50 years, respectively, and ordered that the three sentences be served consecutively. *Id.* On appeal, the Court concluded that: the evidence presented was sufficient to sustain the Petitioner's convictions; the trial court had not erred in its evidentiary rulings; and that the Petitioner's sentence was not excessive. *Id.* at *3.

## B. Post-Conviction Petitions

The Petitioner filed his first petition for post-conviction relief, alleging that he had received the ineffective assistance of counsel at trial because his attorney did not present three eye-witnesses who would have testified that he was not the perpetrator of this crime. *James E. Williams v. State*, No. 01C019004CC00096, 1990 WL 209184, at *1 (Tenn. Crim. App., at Nashville, Dec. 20, 1990), *no Tenn. R. App. P. 11 application filed*. The post-conviction court denied the Petitioner's petition, and this Court affirmed. *Id.* In our opinion, we recounted:

The [Petitioner] testified there were three eye-witnesses to the crime who would have testified the [Petitioner] was not the perpetrator. The [Petitioner's] attorney testified the [Petitioner] gave him the names of two of the witnesses only after he had been convicted. The attorney was unable to locate one of these witnesses. He spoke to a second one and determined he had not been an eyewitness after all. The third witness was the [Petitioner's] son, who supposedly was riding his bicycle past the scene of the crime and saw a man running away.

The attorney testified he had never heard that the [Petitioner's] son was a potential witness. On cross-examination, the attorney general pointed out that the perpetrator of these crimes did not run away, but drove away from the scene in the victim's van with the victim's child in the back seat.

*Williams*, 1990 WL 209184, at *1.

The Court affirmed the post-conviction court's judgment, holding:

The record in this case does not support the [Petitioner's] claim of inadequate assistance of counsel. The witnesses the [Petitioner] claims should have been called are either unhelpful or irrelevant to his cause. He has failed to carry the burden of showing his attorney was unprofessional in failing to locate or call these people as witnesses. The use of these witnesses would not have assisted in his defense nor can we say their absence prejudiced the outcome of the case.

*Id.* (citation omitted).

The Petitioner filed a second petition for post-conviction relief. *James E. Williams*, No. 01C01-9402-CC-00064, 1994 WL 672579, at *1 (Tenn. Crim. App., at Nashville, Dec. 1, 1994), *perm. app. denied* (Tenn. Mar. 27, 1995). In this petition, the Petitioner alleged, "in general terms insufficiency of the indictment, insufficiency of the convicting evidence, and evidentiary errors alleged to have been committed by the trial judge during the [Petitioner's] trial." *Id.* The post-conviction court dismissed the petition after a hearing. *Id.* On appeal, this Court affirmed the post-conviction court's judgment, concluding that the petition was time-barred. *Id.* at *2.

### C. Writ of Error Coram Nobis

In December 2006, the Petitioner filed his first petition for a writ of error coram nobis,

along with a motion to reopen his petition for post-conviction relief. The Petitioner alleged that two police reports were newly discovered evidence that would prove his innocence. The trial court dismissed the writ of error coram nobis, and this Court affirmed that judgment by a memorandum opinion. *James E. Williams v. State*, No. M2006-01056-CCA-R3-CO, 2007 WL 2088948, at *1 (Tenn. Crim. App., at Nashville, July 23, 2007), *perm. app. denied* (Tenn. Oct. 22, 2007).

In 2012, the Petitioner filed a second petition for a writ of error coram nobis, which is the subject of this appeal. In the petition, the Petitioner alleged that: (1) police did not provide the Tennessee Bureau of Investigations his palm print for comparison with a palm print on the gun used during the crime; (2) his trial attorney was ineffective because he did not relay to him a plea offer; and that (3) his conviction was based on his wife's coerced confession. The State filed a motion to dismiss, in which it alleged that the Petitioner's petition for error coram nobis reflief was filed beyond the applicable statute of limitations and that the petition had failed to factually allege any "newly discovered evidence."[1] The trial court summarily dismissed the Petitioner's petition for a writ of error coram nobis.

It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that the trial court erred when it dismissed his petition for a writ of error coram nobis without holding an evidentiary hearing. He further asserts that the trial court erred when it dismissed the petition because he presented three pieces of newly discovered evidence: (1) latent prints on the revolver that are not that of the Petitioner; (2) a plea agreement that was not relayed to the Petitioner; and (3) that police officers used coercive tactics when interviewing his wife. To these allegations, the State responds, first, that the Petitioner's petition for a writ of error coram nobis is time barred. The State goes on to address each of the Petitioner's allegation in turn, stating that they each lack merit.

A writ of error coram nobis is available to a defendant in a criminal prosecution. T.C.A. § 40-26-105(a) (2012). The decision to grant or to deny a petition for the writ of error coram nobis on its merits rests within the sound discretion of the trial court. *State v. Ricky Harris*, 301 S.W.3d 141, 144 (Tenn. 2010) (citing *State v. Vasques*, 221 S.W.3d 514, 527-28 (Tenn. 2007)). Tennessee Code Annotated section 40-26-105(b) provides, in pertinent part:

Upon a showing by the defendant that the defendant was without fault in

---

[1]The complete motion to dismiss is not included in the record on appeal.

failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

A writ of error coram nobis is an "extraordinary procedural remedy," filling only a "slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999); *State v. Workman*, 111 S.W.3d 10, 18 (Tenn. Crim. App. 2002). As previously noted by our Court, "the purpose of this remedy 'is to bring to the attention of the [trial] court some fact unknown to the court, which if known would have resulted in a different judgment.'" *State v. Hart*, 911 S.W.2d 371, 374 (Tenn. Crim. App. 1995) (quoting *State ex rel. Carlson v. State*, 407 S.W.2d 165, 167 (Tenn. 1996)).

To establish that he is entitled to a new trial, the Petitioner must show: (a) the grounds and the nature of the newly discovered evidence, (b) why the admissibility of the newly discovered evidence may have resulted in a different judgment if the evidence had been admitted at the previous trial, (c) that the Petitioner was without fault in failing to present the newly discovered evidence at the appropriate time, and (d) the relief sought. *Hart*, 911 S.W.2d at 374-75. Affidavits should be filed in support of the petition. *Id.* at 375.

> The grounds for seeking a petition for writ of error coram nobis are not limited to specific categories, as are the grounds for reopening a post-conviction petition. Coram nobis claims may be based upon any "newly discovered evidence relating to matters litigated at the trial" so long as the petitioner also establishes that the petitioner was "without fault" in failing to present the evidence at the proper time. Coram nobis claims therefore are singularly fact-intensive. Unlike motions to reopen, coram nobis claims are not easily resolved on the face of the petition and often require a hearing.

*Harris v. State*, 102 S.W.3d 587, 592-93 (Tenn. 2003). Similar to habeas corpus hearings, coram nobis evidentiary hearings are not mandated by statute in every case." *Richard Hale Austin v. State*, No. W2005-02591-CCA-R3-CO, 2006 WL 3626332, *6 (Tenn. Crim. App., Jackson, Dec. 13, 2006). A petition of either type "'may be dismissed without a hearing, and without the appointment of counsel for a hearing'" if the petition does not allege facts showing that the petitioner is entitled to relief. *Id.* (quoting *State ex rel. Edmondson v. Henderson*, 421 S.W.2d 635, 636 (Tenn. 1967)).

Coram nobis claims are subject to a one-year statute of limitations that is computed from the date the judgment of the trial court becomes final. T.C.A. § 27-7-103 (2009); *State*

*v. Mixon*, 983 S.W.2d 661, 670 (Tenn. 1999).  The State bears the burden of raising the bar of the statute of limitations as an affirmative defense.  *Harris*, 102 S.W.3d at 593.  Due process considerations may toll the statute of limitations applicable to coram nobis petitions. *Workman v. State*, 41 S.W.3d 100, 101 (Tenn. 2001).  To determine whether due process requires tolling, a court must weigh the petitioner's interest in obtaining a hearing to present a later-arising ground for relief against the State's interest in preventing stale and groundless claims.  *Id.* at 103.  In balancing these interests, a court should utilize a three-step analysis:

> (1) determine when the limitations period would normally have begun to run;
>
> (2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and
>
> (3) if the grounds are "later-arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim.

*Sands v. State*, 903 S.W.2d 297, 301 (Tenn. 1995).  Whether due process requires tolling of the limitations period is a mixed question of law and fact, which this Court reviews de novo with no presumption of correctness.  *See Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006).

In this case, the State contends that the Petitioner's petition is time barred.  The Petitioner's one-year statute of limitations began to run when his judgment became final, thirty days after January 19, 1988.  This Court affirmed his judgments on December 30, 1988, and the Tennessee Supreme Court denied the Petitioner permission to appeal on April 3, 1989.  The Petitioner filed his petition for a writ of error coram nobis on June 7, 2012, which is well beyond the one-year statute of limitations.  We conclude that the Petitioner's petition for a writ of error coram nobis is time-barred and that due process does not require a tolling of the limitations period.  The trial court did not, therefore, err when it summarily dismissed the petition for a writ of error coram nobis.  Further, addressing the issues presented, each of them lacks merit.

Our Supreme Court outlined the procedure that a trial court considering a petition for a writ of error coram nobis is to follow:

> [T]he trial judge must first consider the newly discovered evidence and be "reasonably well satisfied" with its veracity.  If the defendant is "without fault" in the sense that the exercise of reasonable diligence would not have led to a timely discovery of the new information, the trial judge must then consider both the evidence at trial and that offered at the coram nobis proceeding in

order to determine whether the new evidence may have led to a different result.

*State v. Vasques*, 221 S.W.3d 514, 527 (Tenn. 2007). In determining whether the new information may have led to a different result, the question before the court is "'whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceeding might have been different.'" *Id.* (quotations omitted). There are, however, limits to the types of evidence that may warrant the issuance of a writ of error coram nobis. *See, e.g., State v. Hart*, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995). Aside from the fact that the evidence must be both admissible and material to the issues raised in the petition,

> [a]s a general rule, subsequently or newly discovered evidence which is simply cumulative to other evidence in the record or serves no other purpose than to contradict or impeach the evidence adduced during the course of the trial will not justify the granting of a petition . . . when the evidence . . . would not have resulted in a different judgment.

*Id.* (citations omitted).

The Petitioner, in his brief, states that the latent prints on the revolver were never compared to his prints but that such comparison would prove his innocence. He further asserts his belief that law enforcement officers printed his palm when they fingerprinted him in relation to this case. As the State notes, the Petitioner's attorney had access to the State's file before trial, including the lab report about the palm print on the gun. This evidence is not, therefore, later arising.

The Petitioner asserts that the Assistant District Attorney ("ADA") made a plea offer to the Petitioner's attorney before trial but that his attorney never relayed that offer to him. To support his contention, the Petitioner notes that the ADA wrote a letter indicating that the Petitioner's attorney had declined the offer. The Petitioner asked his attorney about this, and the Petitioner's attorney responded that his file indicated that the ADA had never made an offer and that the Petitioner had expressed disinterest in any such offer, maintaining that he was innocent of the charges. The State notes that the Defendant was on bond in this case for another armed robbery, an armed robbery for which he was later convicted. He also had four other felony convictions. It is unclear from the ADA's letter to which charge the offer was extended. Further, the Petitioner's attorney's notes do not indicate either a plea offer or the Petitioner's desire to seek a plea offer. In any event, this issue would not be an appropriate ground for error coram nobis relief in that, first, its veracity is not certain and that, given the Petitioner's expression of innocence, the result of the proceedings would not have had a different result. *See Vasques*, 221 S.W.3d at 527.

In support of his final allegation, the Petitioner contends that law enforcement officers told his wife that they would put her in jail and take her children if she did not implicate the Petitioner in these crimes. According to the Petitioner, after she gave her statement, law enforcement officers followed her for two months to ensure that she testified against the Petitioner so as to wrongfully convict him. The Petitioner attached an affidavit from his wife supporting these allegations. The State responds that the Defendant's wife testified at trial that law enforcement officers coerced her into a confession. She said at trial that he was at work on the day of the robbery. She conceded, however, that he could have gone to town without her knowing. The State asserts that, because the jury heard the evidence regarding any coercion by law enforcement officers, this evidence was not newly discovered. We agree with the State that this evidence does not constitute "newly discovered" evidence. Accordingly, the Petitioner is not entitled to relief.

## II. Conclusion

After a thorough review of the record and the applicable law, we affirm the coram nobis court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE