IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 2, 2016

**REGINALD ROME v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 03-10497     W. Mark Ward, Judge**

_____

**No. W2015-01399-CCA-R3-ECN  -  Filed March 29, 2016**
_____

Petitioner, Reginald Rome, appeals the dismissal of his petition for a writ of error coram nobis which alleged newly discovered evidence.  The coram nobis court found that due process principles did not require tolling the statute of limitations and that Petitioner had failed to prove that he was without fault in failing to present this evidence at the proper time.  Upon our review, we affirm the judgment of the coram nobis court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Patrick E. Stegall, Memphis, Tennessee, for the appellant, Reginald Rome.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Amy P. Weirich, District Attorney General; and Shaun Schielke, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual and Procedural Background*

Well over thirteen years ago, Petitioner killed Greg Selby, a Shelby County Sheriff's deputy, and attempted to kill several other deputies as they attempted to serve a search warrant.  He was convicted by a Shelby County jury of one count of first degree murder and five counts of attempted first degree murder.  *See State v. Reginald Rome*, No. W2006-00838-CCA-R3-CD, 2008 WL 2331018 (Tenn. Crim. App. June 5, 2008), *no*

*perm. app. filed*. Petitioner received a total effective sentence of life without parole plus 100 years. This Court affirmed Petitioner's convictions and sentences on appeal. *Id*. Petitioner subsequently filed a petition for post-conviction relief, the denial of which was upheld by this Court on appeal. *Reginald Rome v. State*, No. W2009-02027-CCA-R3-PC, 2011 WL 198629 (Tenn. Crim. App. Jan. 12, 2011), *perm. app. denied* (Tenn. May 25, 2011).

## A. Evidence at Trial

On December 4, 2002, the victim, Deputy George Selby, along with other members of the Shelby County Sheriff's Office, attempted to serve a narcotics search warrant upon Petitioner's home. *Reginald Rome*, 2008 WL 2331018, at *1. Deputy William Speight testified that he and a team of twelve officers went to Petitioner's home around 5:30 or 6:00 p.m. Though it was dark outside, several witnesses testified that there were streetlights on as well as lights on over the front porch and in the living room. *Id*. at *1, *7. Deputy Speight testified that he and the other officers were wearing "raid gear" that contained markings identifying them as law enforcement. *Id*. at *1.

Deputy Speight testified that he banged on an iron door at the front entry twice and announced, "Sheriff's office, search warrant." *Id*. Several other witnesses, including other officers at the scene and Petitioner's brother-in-law, Calvin Williams, who was watching television in the living room at the time, confirmed that Deputy Speight announced the presence of law enforcement. *Id*. at *2-3. Deputy Speight testified that he allowed more than enough time for someone to answer the door before attempting to enter. *Id*. at *1. He discovered that the iron door was locked, so he and another officer used a pick and ram to force open both the iron door and a wooden door behind it. A gunshot came from the house, and a bullet fatally struck Deputy Selby as he was preparing to enter the house. Other officers returned fire. Mr. Williams testified that prior to the shooting, he told Petitioner that the police were there and not to shoot. *Id*. at *3. Eventually, the shooting stopped, and both Petitioner and Mr. Williams were brought out of the house by a police dog. *Id*. at *1.

Petitioner testified on his own behalf and explained that his house had been burglarized twice previously, including the day before this incident. *Id*. at *15. Petitioner testified that on December 3, 2002, he and Mr. Williams discovered his front door busted open, the house ransacked, and several items missing, including a television and other personal items; however, other items of value, including two televisions, stereo equipment, and a handgun, were not taken. *Id*. at *15, *17. Petitioner reported this burglary to the police. Petitioner claimed that the damage to the wooden door was caused by this earlier break-in.

Petitioner testified that on the night of December 4, 2002, he heard a loud bang, and Mr. Williams told him that someone was breaking into the house. *Id.* at \*16. Petitioner testified that he was scared because he believed the burglars had returned. Petitioner got his revolver from a dresser drawer, which he admitted that he was not allowed to have due to a prior drug conviction, and fired a shot toward the open front door. *Id.* Petitioner testified that he heard a shot from outside, so he continued firing his gun until he had emptied it. During the exchange of gunfire, Petitioner was struck by a bullet in the hand. Petitioner denied that he heard the officers announcing that they were with the Sheriff's Office and had a search warrant and claimed that he would not have fired his gun had he known the men were law enforcement. *Id.*

## B. Coram Nobis Proceedings

On August 28, 2014, Petitioner filed a pro se petition for a writ of error coram nobis based on alleged newly discovered evidence.[1] Counsel was appointed and an amended petition was filed on January 23, 2015. According to the petitions, the newly discovered evidence concerned Deputy Speight's testimony in a federal corruption trial several years prior to Petitioner's trial. The defendants in that case, Alton Mills and Stephen Toarmina, were accused of running a "job-for-cash operation," where prospective Sheriff's deputies would pay a "political donation" in order to be hired.[2] *See United States v. Mills*, 204 F.3d 669 (6th Cir. 2000). Deputy Speight and other officers involved in the incident with Petitioner, including Deputy Selby, were granted immunity in exchange for their testimony. Petitioner asserted that this evidence called into question the credibility of the officers who testified against him and that due process required tolling of the statute of limitations. The State filed a response, asserting that the petition should be dismissed for having been filed outside of the statute of limitations or, alternatively, for failing to show that Petitioner was without fault in failing to discover this evidence in a timely manner.

At the July 20, 2015 hearing on the petition, Petitioner testified that he found out through news clippings that Deputy Speight had paid for his job in the early 1990s without filling out or signing a job application and had solicited others to do so as well. Petitioner testified that he learned of the news clippings approximately five or six months before filing his petition. Petitioner obtained a transcript of Deputy Speight's testimony

---

[1] The petition also contains a handwritten notation that it was "filed 7/31/14." The precise date on which the petition was filed does not affect the resolution of this matter as both dates are outside of the one year statute of limitations period. *See* T.C.A. § 27-7-103; *State v. Mixon*, 983 S.W.2d 661, 670 (Tenn. 1999).

[2] Mr. Mills was the Chief Deputy Sheriff of the Shelby County Sheriff's Office. Mr. Toarmina held the position of Staff Special Deputy and also had a stake in the loan company that funded most of these "donations."

from the 1996 federal trial, which was admitted as an exhibit to the hearing.[3] The State noted that Deputy Speight was never charged with or convicted of a crime in relation to the bribery scheme. The court asked Petitioner how this evidence might have affected the outcome of his trial, to which Petitioner responded: "had I known it, I know the State wouldn't have took [sic] it to trial." Petitioner also testified that "my constitution [sic] was violated because William Speight should have not got a search warrant" because he "wasn't really no [sic] police." When asked to explain how this evidence would cause the jury to come to a different verdict, Petitioner responded "I believe it will."

The coram nobis court filed an order on July 24, 2015, denying the petition. The court found that Petitioner had failed to establish that the statute of limitations should be tolled on due process grounds. The court also found that Petitioner failed to establish that the evidence was "newly discovered," that he was without fault in failing to present the evidence at trial, and that the admission of this evidence may have resulted in a different judgment. The court noted that Petitioner did not show that his trial attorneys were unaware of this evidence, could not have discovered the evidence through due diligence, or that the evidence was wrongfully withheld by the State. Petitioner filed a timely notice of appeal.

*Analysis*

A writ of error coram nobis lies "for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial." T.C.A. § 40-26-105(b); *State v. Hart*, 911 S.W.2d 371, 374 (Tenn. Crim. App. 1995). The writ of error coram nobis is "an *extraordinary* procedural remedy," designed to fill "only a slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999) (emphasis in original). In order to seek coram nobis relief, a petitioner must "establish[] that the petitioner was 'without fault' in failing to present the evidence at the proper time." *Harris v. State*, 102 S.W.3d 587, 592-93 (Tenn. 2003). To be considered "without fault," the petitioner must show that "the exercise of reasonable diligence would not have led to a timely discovery of the new information." *State v. Vasques*, 221 S.W.3d 514, 527 (Tenn. 2007). The coram nobis court will then determine "whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceedings might have been different." *Id.* at 526.

A petition for a writ of error coram nobis must be filed within one year after the judgment becomes final. T.C.A. § 27-7-103. For the purposes of coram nobis relief, a

---

[3] Petitioner also submitted the transcript of the testimony of Deputy George Stauffer from the same federal trial. Deputy Stauffer was also involved in serving the warrant on Petitioner in December 2002 and testified against him at his murder trial.

- 4 -

judgment becomes final thirty days after the entry of the judgment in the trial court if no post-trial motion is filed or upon entry of an order disposing of a timely filed post-trial motion. *Mixon*, 983 S.W.2d at 670. It has been the "longstanding rule that persons seeking relief under the writ must exercise due diligence in presenting the claim." *Id.* The State bears the burden of raising the statute of limitations as an affirmative defense. *Id.*; *Sands v. State*, 903 S.W.2d 297, 299 (Tenn. 1995).

Despite the one-year statute of limitations, when a petitioner seeks a writ of error coram nobis based on newly discovered evidence, due process considerations may require tolling the statute of limitations. *Harris*, 301 S.W.3d at 145 (citing *Workman v. State*, 41 S.W.3d 100, 103 (Tenn. 2001)). Our supreme court has held that, "before a state may terminate a claim for failure to comply with procedural requirements such as statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner." *Workman*, 41 S.W.3d at 102 (quoting *Burford v. State*, 845 S.W.2d 204, 208 (Tenn. 1992)). Whether due process considerations require tolling of a statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness. *Harris*, 301 S.W.3d at 145.

To determine whether due process principles require tolling the statute of limitations, a court must balance the State's interest in preventing stale and groundless claims with the petitioner's interest in obtaining a hearing to present a later-arising ground for relief. *Harris*, 301 S.W.3d at 145 (citing *Workman*, 41 S.W.3d at 103). In balancing these interests, the court must apply a three-step analysis:

> (1) determine when the limitations period would normally have begun to run; (2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds for relief are "later-arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim.

*Id.* (quoting *Sands*, 903 S.W.3d at 301). As a general rule, the claim at issue must not have existed during the limitations period to trigger due process consideration. *Seals v. State*, 23 S.W.3d 272, 278 (Tenn. 2000). Ignorance as to the existence of a claim does not create a "later-arising" claim for due process purposes. *See Brown v. State*, 928 S.W.2d 453, 456 (Tenn. Crim. App. 1996); *Passarella v. State*, 891 S.W.2d 619, 635 (Tenn. Crim. App. 1994).

It appears from the record before us that Petitioner's judgment became final in 2006.[4] Petitioner did not file his petition for a writ of error coram nobis until 2014, well outside of the one-year statute of limitations period. Additionally, Petitioner's claim of newly discovered evidence does not constitute a "later-arising" claim because the evidence at issue—Deputy Speight's testimony in a 1996 federal corruption trial— existed long before Petitioner's trial. There was no evidence presented that "the exercise of reasonable diligence would not have led to a timely discovery of the new information." *Vasques*, 221 S.W.3d at 527. Petitioner argues that the statute of limitations should be tolled because "[t]he evidence [Petitioner] seeks to introduce is significant" and bears upon the credibility of the officers that testified against him. However, the significance of the evidence has no bearing on whether due process principles require tolling of the statute of limitations. The key determination is whether the claim actually arose after the commencement of the limitations period. *See Harris*, 301 S.W.3d at 145 (quoting *Sands*, 903 S.W.3d at 301). Again, ignorance as to the existence of a claim does not create a "later-arising" claim for due process purposes. *Brown*, 928 S.W.2d at 456; *Passarella*, 891 S.W.2d at 635. Because this evidence existed for nearly a decade before Petitioner's trial and could have been discovered through the exercise of reasonable diligence, Petitioner has not met his burden of proving that due process requires tolling of the one-year statute of limitations.

## *Conclusion*

Petitioner presents a stale and groundless claim which would have made zero difference in the outcome of his 2005 trial. Based on the foregoing, we affirm the judgment of the coram nobis court.

_____
TIMOTHY L. EASTER, JUDGE

---

[4] Though the final judgments are not in the record, the coram nobis court's order indicates that Petitioner was sentenced on the first degree murder conviction on November 13, 2005, and was sentenced on the remaining counts on March 13, 2006. There is no indication whether any post-trial motions were filed, but Petitioner's notice of appeal was filed in this Court on April 25, 2006.