IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 14, 2017

**JERRY D. CARNEY v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 97-D-2821      Cheryl A. Blackburn, Judge**

_____

**No. M2016-01153-CCA-R3-ECN**

_____

In 1998, a Davidson County jury convicted the Petitioner, Jerry D. Carney, of first degree premeditated murder. On direct appeal, this Court affirmed the Petitioner's convictions. *See State v. Jerry D. Carney*, No. M1999-01139-CCA-R3-CD, 2000 WL 1335770, at *1 (Tenn. Crim. App., at Nashville, Sept. 15, 2000), *perm. app. denied* (Tenn. April 24, 2001). On December 19, 2014, the Petitioner filed his fourth petition for a writ of error coram nobis and in it alleged newly discovered evidence. The trial court issued an order on April 22, 2014, dismissing the petition as time-barred and meritless. We affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and CAMILLE R. MCMULLEN, JJ., joined.

Jerry D. Carney, Only, Tennessee, Pro Se.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Megan M. King, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

A Davidson County jury convicted the Petitioner of first degree premeditated murder after evidence at trial showed that the Petitioner, on August 13, 1997, shot the victim, Craig Cartwright, six times. This court summarized the underlying facts and procedural history in our last opinion addressing the Petitioner's third petition for a writ of error coram nobis.

Our direct appeal opinion provides the following summary of the proof presented at trial:

On the night of August 13, 1997, the [Petitioner], Jerry Carney, was "riding around" Nashville and drinking beer with his friends Eric Bradshaw, Mike Shane, Jimmy Womack, and Melia Gribble. Erin Harris, another friend, paged the [Petitioner] and requested that he pick her up at 716 Virginia Avenue. On the way to Virginia Avenue, Bradshaw remarked that he believed that someone who had a problem with his brother, someone named "Shane" or "Shawn," lived at that address.

Upon arriving at the residence, the four males exited the car and began urinating in the front yard. Bill Massey and [the victim] walked out of the residence to investigate. The [Petitioner] began asking several people, "Who is Shane?" [The victim] responded that he was Shane. Upon hearing [the victim] identify himself as Shane, the [Petitioner] quickly walked back to the vehicle and sat in the back seat behind the driver.

Massey approached the car on the driver's side and noticed a gun on the seat near the [Petitioner]. Massey asked if the [Petitioner] had a problem. The [Petitioner] replied that there was no problem. Massey then requested one of the beers that was located in the back seat. The [Petitioner] handed Massey a beer. As soon as Massey touched the beer, the [Petitioner] grasped the gun with both hands. Massey threw down the beer and grabbed the [Petitioner], hoping to disarm him. [The victim] had moved to the passenger side of the car. Although Massey was in direct contact with the [Petitioner], the [Petitioner] never looked at Massey. Instead, the [Petitioner] pulled the slide of the gun back twice and fired six shots into [the victim] who was standing near the open passenger door.

The [Petitioner], Bradshaw, Shane, Womack, Gribble, and Harris sped away in the car to Bradshaw's house. The [Petitioner] took a shirt and wiped the car, inside and out, in order to destroy evidence. He also removed a decal from the back glass of the car and tried to remove all of the spent shell casings from the car. The

2

[Petitioner] entered Bradshaw's house, removed his bloody clothes, and soaked them in water in the bathtub. He then went to sleep and slept until the next day when he was picked up by the police for questioning.

The [Petitioner] testified that he shot [the victim] in self-defense. The [Petitioner] stated that he was afraid of Massey and [the victim] because they were much larger than he. The [Petitioner] claimed that Massey had grabbed the [Petitioner] by the shirt collar prior to the [Petitioner's] retreat to the car. The [Petitioner] alleged that he feared Massey or [the victim] would hurt him or try to take his gun and use it against him.

*Id.*

The [P]etitioner later filed a petition for a petition for post-conviction relief and a petition for writ of habeas corpus, both of which were denied. *See Jerry D. Carney v. State*, No. M2002-02416-CCA-R3-PC, 2005 WL 351238, at *1 (Tenn. Crim. App. Feb. 14, 2005), *perm. app. denied* (Tenn. June 20, 2005), and *Jerry D. Carney v. David Mills, Warden*, No. W2004-01563-CCA-R3-HC, 2004 WL 2756052, at *1 (Tenn. Crim. App. Dec. 2, 2004). Among other things, the [P]etitioner alleged in the post-conviction petition that trial counsel was ineffective for failing to object to the medical examiner's testimony concerning the autopsy report, which was of the wrong victim. 2005 WL 351238, at *7. This court affirmed the post-conviction court's findings that the [P]etitioner was not prejudiced by the erroneous report because whether the [P]etitioner shot and killed the victim was not an issue at his trial:

As the post-conviction court stated, the [P]etitioner asserted self-defense as a defense and whether he shot the victim or not was not an issue in the trial. In addition, the autopsy report was never shown to the jury and trial counsel had the opportunity to cross-examine the witness regarding the autopsy report. For these reasons, we conclude that the evidence does not preponderate against the post-conviction court's conclusions.

*Id*. at *8.

On September 10, 2004, the [P]etitioner filed a pro se petition for writ of error coram nobis in which "he alleged various pieces of favorable

3

evidence were withheld at trial by the State." *Jerry D. Carney v. State*, No. M2005-01904-CCA-R3-CO, 2006 WL 2206045, at *2 (Tenn. Crim. App. July 31, 2006). The trial court dismissed the petition on the grounds that it was untimely, that several of the [P]etitioner's allegations of favorable evidence had been previously addressed, and that the two remaining pieces of allegedly favorable evidence, which consisted of a piece of the [P]etitioner's clothing and a hair that had been found on the victim, were not newly discovered and would not have changed the outcome of the trial. *Id*. at *2-4. On appeal, this court affirmed the judgment of the trial court by memorandum opinion pursuant to Rule 20, Rules of the Court of Criminal Appeals. *Id*. at * 1.

On May 2, 2006, the [P]etitioner filed a second petition for writ of error coram nobis in which he claimed that he had first learned at the hearing on his first petition for writ of error coram nobis "that a .22 caliber gun listed on a police report was actually found inside the vehicle in which the fatal shooting had taken place." *Jerry D. Carney v. State*, No. M2006-01740-CCA-R3-CO, 2007 WL 3038011, at *2 (Tenn. Crim. App. Oct. 17, 2007). The trial court dismissed the petition on the basis that it was untimely and failed to state a claim for error coram nobis relief, and this court affirmed the judgment. *Id*. at *2-3.

Finally, on September 15, 2011, the [P]etitioner filed this, his third petition for writ of error coram nobis, or, in the alternative, motion to reopen his previously filed coram nobis petitions. In the instant petition, the [P]etitioner alleges that the medical examiner's 2010 Mississippi arrest and subsequent guilty plea conviction to felony possession of marijuana and his 2010 Tennessee guilty plea conviction to official misconduct constitute newly discovered evidence that would have altered the outcome of his trial. The [P]etitioner argues that the medical examiner's "negligent and deceptive acts" at the [P]etitioner's trial and his "recent felonious act and official misconduct," show that the medical examiner was not credible and that he committed fraud and aggravated perjury at the [P]etitioner's trial.

On November 14, 2011, the trial court entered a detailed written order dismissing the petition on the grounds that it was untimely, that there were no due process grounds that required the tolling of the statute of limitations, and that the petition failed to state a cognizable ground for error coram nobis relief.

4

*Jerry D. Carney v. State*, No. M2011-02766-CCA-R3-CO, 2012 WL 5193435, at *1 (Tenn. Crim. App, at Nashville, Oct. 22, 2012).

In this most recent petition, the Petitioner acknowledged filing this petition outside the one-year statute of limitations but asserted that due process tolling should be applied based upon later-arising evidence in the form of a trial witness's August 2014 recantation. The Petitioner submitted an affidavit signed by a state witness, Natasha Holland. The affidavit asserts that there was a "hostile environment" at the residence where the shooting occurred and that the victim acted aggressively toward the Petitioner. Further, Ms. Holland affirms that both the Petitioner and Massey had their hands on the pistol "at the time [she] heard the shots fired." She recants her testimony about seeing the Petitioner point the gun at the victim and fire it.

On April 22, 2016, the trial court issued an order denying relief. The trial court found:

> [T]he limitations period [in this case] would have begun to run in April 2001, when the Tennessee Supreme Court denied permission to appeal the Court of Criminal Appeals opinion. The filing of the petition for a writ of error coram nobis nearly 15 years later, therefore, is untimely.
>
> The next step is to determine whether the grounds alleged in the coram nobis petition arose after the statute of limitations period expired, or in other words, whether the grounds were later-arising. As further discussed in Part III.B. of this order, the grounds Petitioner alleges are not "later-rising" grounds related to Petitioner's case.
>
> Accordingly, this Court concludes that nearly 15-year delay is unreasonable and that, as a matter of law, the [P]etitioner is not entitled to due process tolling. See, e.g., Billy Ray Irick v. State, No. E2010-02385-CCA-R3-PD, 2011 WL 1991671 (Tenn. Crim. App., at Knoxville, May 23, 2011). The petition is time-barred.

The trial court went on to consider whether Ms. Holland's affidavit constituted "later-arising" grounds warranting relief and made the following findings:

> This Court has reviewed the "newly discovered" evidence of Ms. Holland's recantation in the form of her Affidavit and has compared it to her trial testimony, which also has been provided as an exhibit to the petition. Other than Ms. Holland making the blanket statement that her trial

5

testimony was not true, and that her trial testimony that she observed Petitioner shoot the victim is false, Ms. Holland's factual statements in her affidavit do not contradict her trial testimony. The only seemingly "new" information Ms. Holland provides is that the victim displayed signs of aggression towards Petitioner and both Petitioner and the victim had their hands on the firearm when it went off. Ms. Holland also provides the history of her conversations with the police where she said she volunteered the firearm may have been discharged by Bill Massey during the struggled with Petitioner, or simply discharged during the struggle with no one intending it to be fired. All of the statements Ms. Holland gave the police during her pre-trial interviews would have been known and available to the parties prior to trial and provided in the discovery.

Although Ms. Holland testified on direct that she saw Petitioner shoot the victim and fire a total of five times, during the cross-examination, Petitioner's trial counsel (1) pointed out Ms. Holland's prior testimony/statements where she said she saw Mr. Massey grab Petitioner, and Ms. Holland agreed that Mr. Massey was holding on to the Petitioner until the shots were fired; (2) pointed out Ms. Holland's friendship with the victim and her sister's relationship with the other passengers in the car to show bias against the Petitioner; and (3) explored that Mr. Cartwright may have been hiding a weapon in his hat.

As has been noted in the Court's previous orders regarding the three prior petitions for writ of error coram nobis, at no point during the trial was there a dispute that Petitioner shot the victim. The issue at trial was whether the shooting was an act of self-defense. Petitioner's trial counsel addressed the self-defense issues and conflicts in Ms. Holland's pre-trial and trial statements that are raised in Ms. Holland's 2014 Affidavit during his cross-examination of her at trial. The jury, therefore, heard this evidence and was able to make a credibility determination when rendering its verdict. Accordingly, Ms. Holland's affidavit does not raise any new issues to warrant the tolling of the statute of limitations nor does her affidavit provide Petitioner a cognizable claim for a writ of error coram nobis. Petitioner's request for relief is denied. The Court further notes that in Ms. Holland's Affidavit, in addition to indicating she felt pressured by the state and doing what "everyone wanted me to do", Ms. Holland explicitly states that she "was also under threats made by Jerry Carney's family and friends" and moved to Memphis until the trial was over.

6

Moreover, the Court notes that Ms. Holland was not the only eyewitness who testified at trial. Eyewitnesses who testified at trial included Melia Gribble, Mike Shane, and William Massey. These three witnesses testified in addition to the State's other witnesses: MNPD Officer Randy Jones. MNPD Sergeant Duane Phillips, and Officer Johnny Lawrence who responded to the shooting scene; MNPD Officer Jeff Biggerstaff, MNPD William Massey, MNPD Detective Brad Corcoran, MNPD Officer Earl Hunter, and Detective D. Satterfield who worked the scene and interviewed witnesses; and Dr. Emily Ward who participated in the autopsy. The Petitioner also testified at trial.

(citations omitted). It is from this judgment that the Petitioner appeals.

## II. Analysis

On appeal, the Petitioner argues that the trial court erred when it dismissed his petition for a writ of error *coram nobis* because newly discovered evidence entitles him to relief. The Petitioner submits that Ms. Holland's recantation is material and vital, requiring the waiving of the statute of limitations. The State responds that the trial court correctly dismissed the Petitioner's claim as untimely and that the stated grounds for relief do not constitute "newly discovered evidence." We agree with the State.

Tennessee Code Annotated section 40-26-105 (2012) provides:

There is hereby made available to convicted defendants in criminal cases a proceeding in the nature of a writ of error coram nobis, to be governed by the same rules and procedure applicable to the writ of error coram nobis in civil cases, except insofar as inconsistent herewith. . . . Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which are litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at trial.

It is well-established that the writ of error *coram nobis* "is an extraordinary procedural remedy . . . [that] fills only a slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999). Generally, a decision whether to grant a writ rests within the sound discretion of the *coram nobis* court. *See State v. Hart*, 991 S.W.2d 371, 375 (Tenn. Crim. App. 1995). We, therefore, review for abuse of discretion. *See State v. Workman*, 111 S.W.3d 10, 18 (Tenn. Crim. App. 2002).

7

A petition for a writ of error *coram nobis* must be filed within one year of the judgment becoming final in the trial court. T.C.A. § 27-7-103. This statute of limitations "is computed from the date the judgment of the trial court becomes final, either thirty days after its entry in the trial court if no post-trial motions are filed or upon entry of an order disposing of a timely filed post-trial motion." *Harris v. State*, 301 S.W.3d 141, 144 (Tenn. 2010); *see Mixon*, 983 S.W.2d at 670 ("[W]e reject the contention . . . that the statute does not begin to run until the conclusion of the appeal as of right proceedings."). In the present case, the judgment became final on February 11, 1999,[1] when the trial court entered an order denying the Petitioner's motion for new trial. The Petitioner did not file this petition for writ of error *coram nobis* until December 19, 2014, more than fifteen years later.

The one-year statute of limitations for a petition for writ of error *coram nobis* may be tolled on due process grounds if a petition seeks relief based upon newly discovered evidence of actual innocence. *Harris*, 301 S.W.3d at 145. In determining whether the statute should be tolled, the court must balance a petitioner's interest in having a hearing with the State's interest in preventing a claim that is stale and groundless. *Id*. Generally, "before a state may terminate a claim for failure to comply with . . . statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner." *Burford v. State*, 845 S.W.2d 204, 208 (Tenn. 1992). The *Burford* rule requires three steps:

> (1) determine when the limitations period would normally have begun to run; (2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are "later arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim.

*Sands v. State*, 903 S.W.2d 299, 301 (Tenn. 1995). As a general rule, the claim at issue must not have existed during the limitations period to trigger due process consideration. *Seals v. State*, 23 S .W.3d 272 (Tenn. 2000). Discovery of or ignorance to the existence of a claim does not create a "later-arising" claim. *See Brown v. State*, 928 S.W.2d 453, 456 (Tenn. Crim. App. 1996); *Passarella v. State*, 891 S.W.2d 619, 635 (Tenn. Crim. App. 1994).

After reviewing the record, we conclude that the trial court abused its discretion in dismissing the petition as time-barred. The Petitioner contends that the trial court

---

[1] The trial court relied on the date that the supreme court denied application for review in the Petitioner's direct appeal rather than the date that the judgment became final in the trial court, as is directed by the *coram nobis* statute.

improperly dismissed the petition without an evidentiary hearing. We first note that this court has repeatedly held that, in general, trial courts are not required to hold evidentiary hearings when the petition for a writ of error *coram nobis* fails to meet the necessary prerequisites to file for such relief. *See State v. Lingerfelt*, 687 S.W.2d 294, 295 (Tenn. Crim. App. 1984); *Cole v. State*, 589 S.W.2d 941, 943 (Tenn. Crim. App. 1979); *see also State v. Johnny L. McGowan*, No. M2007-02681-CCA-R3-C0, 2008 WL 4170273, at *3 (Tenn. Crim. App., at Nashville, Aug.5, 2008), *perm. app. denied* (Tenn. Oct. 27, 2008). Since the Petitioner has not asserted his claim within the time allowed by the statute of limitations, we must now consider whether he has demonstrated that he is entitled to a tolling of the statute of limitations.

The Petitioner has failed to state any ground for which the statute of limitations should be tolled. Further, the claims the Petitioner now raises are not cognizable within a petition for writ of error *coram nobis*. In Tennessee, a writ of error *coram nobis* should be granted when "subsequently or newly discovered evidence . . . may have resulted in a different judgment, had it been presented at trial." T.C.A. § 40-26-105 (2003); *Workman v. State*, 41 S.W.3d 100, 104 (Tenn.2001). As the trial court succinctly laid out in its order denying relief, the Petitioner's claims do not raise such evidence and, we conclude, therefore, that the trial court properly denied the relief sought by the Petitioner.

Finally, the Petitioner argues that the State failed to raise the statute of limitations as an affirmative defense. He correctly notes that the State failed to file a response to the petition at the trial court level. We agree that the statute of limitations is an affirmative defense that must be specifically pled by the State or is deemed waived. *Harris v. State,* 102 S.W.3d 587, 593 (Tenn. 2003). However, we are reviewing the trial court's dismissal of the petition on this basis; the State is not seeking to preclude our review of the trial court's conclusions on this basis. Moreover, the Petitioner concedes in his petition that he was filing outside the statute of limitations in asserting that due process considerations require the tolling of the statute of limitations. *See Sands*, 903 S.W.2d at 299 (Tenn. 1995) (holding there is no waiver if the opposing party is given fair notice and an opportunity to rebut). Because the Petitioner raised the issue of statute of limitations in his petition, he cannot now claim he was not given fair notice of the defense or the opportunity to rebut it.

Accordingly, the Petitioner has failed to demonstrate that the statute of limitations should be tolled in this case; therefore, we conclude that the trial court properly dismissed his untimely petition for *coram nobis* relief. The Petitioner is not entitled to relief.

### III. Conclusion

Based upon the foregoing reasoning and authorities, we affirm the *coram nobis* court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE