IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 17, 2019

## NATHANIEL P. CARSON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2009-A-260      Mark J. Fishburn, Judge**

_____

#### No. M2019-00042-CCA-R3-ECN

_____

The Petitioner, Nathaniel P. Carson, appeals the trial court's dismissal of his petition for writ of error coram nobis in which he challenged his 2010 convictions of two counts of first degree felony murder and two counts of especially aggravated robbery.  After a review of the record and applicable law, we affirm the judgment of the coram nobis court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Joseph L. Morrissey, Jr., Nashville, Tennessee, for the appellant, Nathaniel P. Carson.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Glenn Funk, District Attorney General; and Doug Thurman, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS AND PROCEDURAL BACKGROUND

#### Trial Proceedings

The Petitioner and his co-defendants, Mr. George Cody, Mr. Lavota Churchwell, Ms. Gennyfer Hutcheson, Mr. Michael Holloway, and Mr. Thomas Reed, were indicted for two counts of first degree premeditated murder, two counts of first degree felony murder, two counts of especially aggravated robbery, two counts of identity theft, three counts of forgery, and two counts of attempted forgery.  The indictment later was amended to charge the Petitioner only with two counts of felony murder and two counts

of especially aggravated robbery the remaining charges were dropped. The Petitioner was tried separately from his co-defendants, and in 2010, a jury convicted him as charged. The Petitioner received a life sentence for each of the murder convictions and a fifteen year sentence for each of the especially aggravated robbery convictions to be served concurrently. This court affirmed the Petitioner's convictions in 2012. *See State v. Nathaniel Carson*, No. M2010-02419-CCA-R3-CD, 2012 WL 1484188, at *1 (Tenn. Crim. App. Apr. 27, 2012), *perm. app. denied* (Tenn. Oct. 1, 2012).

This appeal stems from the murder of Mr. Pierre Colas and his sister, Ms. Marie Colas, in 2008. This court summarized the evidence on direct appeal when discussing the sufficiency of the evidence as follows:

> [T]he evidence shows that George Cody and the [Petitioner] lived in very close proximity to each other and the Colas home. About 9:15 p.m. on August 26, 2008, Cody entered the Colas house, robbed the victims, and shot them. Less than two hours after the shootings, the appellant telephoned the La Quinta Inn, where Thomas Reed and Michael Holloway were staying. Cody telephoned Reed and spoke with Holloway about using some credit cards. When Cody arrived at the La Quinta Inn to pick up Holloway and Reed, the [Petitioner] was with him. The four of them went to Cody's house, and the [Petitioner] and Cody talked privately for about ten minutes. Then the [Petitioner] left. In the early morning hours of August 29, 2008, the police arrested Cody at his home. The [Petitioner] telephoned Cody repeatedly and showed up at Cody's house, trying to find out what was happening. The [Petitioner] voluntarily spoke with the police on September 2 and denied having any contact with Cody prior to the shootings. However, the State introduced the [Petitioner]'s cellular telephone records into evidence, showing that the [Petitioner] spoke with Cody on numerous occasions in the days and minutes before the shootings. He also spoke with the [Petitioner] after the shootings. However, the records showed that no telephone calls were made between Cody and the [Petitioner] during the time of the shootings. After the [Petitioner]'s arrest, he learned Maurice Boyd was giving information to the police about the Colas case and conspired with several other jail inmates to kill Boyd. According to the [Petitioner]'s cellmate, Gregory Chafos, the [Petitioner] acknowledged that he "gave them the credit cards and ... told them what had happened."

*Id.* at *11.

With regard to the attack on Mr. Boyd while in jail, Mr. Lawrence Baker testified at trial that he overheard the Petitioner and Mr. Lobbins discussing Mr. Boyd cooperating with law enforcement in the Petitioner's case and that "something's got to happen to [Boyd]." *Id.* at *7. Mr. Baker testified that on the morning of Mr. Boyd's attack Mr. Adkins came into his cell and got him out of bed. *Id.* Mr. Adkins and Mr. Baker walked into Mr. Boyd's cell, and Mr. Adkins and Mr. Boyd started fighting. *Id.* Mr. Baker recalled Mr. Lobbins coming into Mr. Boyd's cell and stabbing him. *Id.* After the attack was over, the Petitioner told Mr. Baker that he would put money into Mr. Baker's commissary account for his role in attacking Mr. Boyd. *Id.*

Mr. Gregory Chafos, the Petitioner's cellmate testified that the Petitioner had told him that he and Mr. Cody had been charged with murder. *Id.* at *8. Mr. Chafos recalled that Petitioner "mentioned something about credit cards … that they went to use some credit cards. And I said, so, in other words, after you gave them the credit cards and you told them what had happened, they still went and used them? And he said, yeah, like that." *Id.* Mr. Chafos also testified about the Petitioner's involvement in the attack of Mr. Boyd. *Id.* Specifically, Mr. Chafos testified that the Petitioner had confronted Mr. Boyd because the Petitioner believed that Mr. Boyd was "snitching" on him.

The Petitioner filed a petition seeking post-conviction relief arguing that trial counsel was ineffective for failing to call a second alibi witness and for failing to request a bill of particulars. The post-conviction court denied the Petitioner relief, and this court affirmed the denial of relief on appeal. *See Nathaniel Carson v. State*, No. M2014-00422-CCA-R3-CD, 2014 WL 6091520, at *5 (Tenn. Crim. App. Nov. 14, 2014).

**Coram Nobis Proceedings**

On September 11, 2015, the Petitioner filed a pro se petition for writ of error coram nobis, arguing that he was denied exculpatory material in violation of *Brady v. Maryland*, 373 U.S. 82 (1963). In particular, the Petitioner alleged that the State failed to provide incident reports concerning the attempted murder of Mr. Boyd. He claimed that he never received these reports in discovery and that the reports are exculpatory because he was not named as being involved. The State responded by arguing that the Petitioner was not entitled to relief and that his petition was barred by the statute of limitations. Following the appointment of counsel, the Petitioner filed a pleading in which he also alleged that the reports constituted newly discovered evidence. The coram nobis court held an evidentiary hearing during which the Petitioner, trial counsel, and the original prosecutor testified.

The Petitioner testified that he filed a request under the Freedom of Information Act in February or March 2014. In April 2014, he received incident reports from the

Davidson County Sheriff's Office relating to the investigation of the attempted murder of Mr. Boyd. There are three different incident reports written by three different officers describing the attack on Mr. Boyd. The report prepared by Officer Rodney Kelly stated that Mr. Boyd informed him that Mr. Adkins, Mr. Lobbins, and Mr. Baker had attacked him. Officer Steven Crouch's report stated that Mr. Boyd informed him on the ride to the hospital that Mr. Adkins and another inmate started hitting him. According to the report, Mr. Lobbins then came into Mr. Boyd's cell and stabbed him. Mr. Boyd told Officer Crouch that he believed he was attacked because he possessed information about Mr. Lobbins' case. The third report was written by Officer Michal Garmon describing blood found on Mr. Baker's boxer shorts and blood found on Mr. Lobbins' pants and shirt. The Petitioner testified that prior to filing his request, he had never received these reports because they were not included in the original discovery. The Petitioner stated that he believed these reports proved he was not involved in the attack of Mr. Boyd and contradicted the evidence presented at trial.

On cross-examination, the Petitioner acknowledged that he did not file his petition for writ of error coram nobis within one year of the entry of final judgment. He explained that he did not have the information from the reports within that time period and claimed that he could not request public records while his charges involving Mr. Boyd were pending. The Petitioner admitted that he knew all the inmates who were involved in the attempted murder of Mr. Boyd because they were all in the same pod.

Trial counsel testified that the State's theory of the case was that the Petitioner was part of a conspiracy to rob the victims. Trial counsel explained that the State introduced evidence that placed the Petitioner in a car with two of the co-defendants who possessed some of the victim's personal property, including a credit card. Trial counsel stated that the State believed the Petitioner was involved in a conspiracy to silence Mr. Boyd. It was believed that Mr. Boyd was providing law enforcement with information about Mr. Churchwell's and the Petitioner's involvement in the murders of the victims.

Trial counsel recalled requesting and receiving discovery from the State. He testified that he had no knowledge of the incident reports documenting the attempted murder of Mr. Boyd. Trial counsel stated that if he had these documents at the time of the hearing regarding the admission of evidence of the attack on Mr. Boyd, he would have used them. He acknowledged that he did not represent the Petitioner in the case where he was charged with the attempted murder of Mr. Boyd. On cross-examination, trial counsel stated that he believed the original prosecutor did not have those documents because trial counsel believed the prosecutor would have turned the documents over to trial counsel if the prosecutor had possessed them.

The original prosecutor testified that he prosecuted both of the Petitioner's cases, the one involving the murders of the victims and the attempted murder of Mr. Boyd. The original prosecutor stated that he invited trial counsel to review the entire case file, which would have included documents relevant to the homicide case and the attempted murder of Mr. Boyd. He explained that they would have had different case numbers but were stored in the same set of boxes and that trial counsel would have had access to the information in both case files. The original prosecutor could not recall whether the reports subject to the coram nobis proceedings were included in the case files.

On cross-examination, the original prosecutor agreed that a prior inconsistent statement from Mr. Boyd might have been information that defense counsel would have utilized. He stated that although a prior inconsistent statement from Mr. Boyd could have been utilized had Mr. Boyd testified, Mr. Boyd did not testify at trial. In response to the court's questioning, the original prosecutor explained that he did not think that the Petitioner was physically involved in the attack of Mr. Boyd. He explained that he dismissed the charges related to the attack of Mr. Boyd after the Petitioner had been convicted and sentenced to life in prison. He stated that he "didn't feel like going forward was a good, particularly, a good use in anyone's time."

The coram nobis court denied the petition, finding that the writ for error coram nobis was filed after the statute of limitations expired and that the Petitioner failed to show that due process dictated tolling the statute of limitations. It found that the newly discovered evidence did not "point to [the] Petitioner being innocent of the felony murders of which he was convicted." The coram nobis court denied relief "[b]ecause the evidence [the] Petitioner has submitted does not point to his actual innocence in this case, there has been no due process reason shown to toll the statute of limitations."

**ANALYSIS**

The Petitioner acknowledges that he did not file his petition for writ of error coram nobis within the statute of limitations; however, he maintains that he is entitled to relief because there was newly discovered evidence. He asserts that the statute of limitations should be tolled. The State responds that the Petitioner's claim was barred by the statute of limitations. Further, the State asserts that the Petitioner's *Brady* claim is not a cognizable coram nobis claim. We agree with the State.

The petition for writ of error coram nobis is an "extraordinary procedural remedy" that "fills only a slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999). A writ of error coram nobis lies "for subsequently or newly discovered evidence relating to matters which were not litigated at trial if the judge determines that such evidence may have resulted in a different judgment, had it been

- 5 -

presented at trial." T.C.A. § 40-26-105(b). To obtain coram nobis relief, the petitioner must prove "(1) that he or she was reasonably diligent in seeking the evidence; (2) that the evidence is material; and (3) that the evidence is likely to change the result of the trial." *State v. Hall*, 461 S.W.3d 469, 495 (Tenn. 2015). "Newly discovered evidence that is merely cumulative or serves no other purpose than to contradict or impeach does not warrant coram nobis relief." *Id.* (internal quotations omitted). The coram nobis court should consider both the evidence at trial and the evidence presented at the coram nobis proceeding in determining "whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceedings might have been different." *State v. Vasques*, 221 S.W.3d 514, 526-27 (Tenn. 2007). The decision to grant or deny a petition for writ of error coram nobis rests within the sound discretion of the coram nobis court. *Hall*, 461 S.W.3d at 496.

A petition for a writ of error coram nobis must be filed within one year after the judgment becomes final. T.C.A. § 27-7-103. For the purposes of coram nobis relief, a judgment becomes final thirty days after the entry of the judgment in the trial court if no post-trial motion is filed, or upon entry of an order disposing of a timely filed post-trial motion. *Mixon*, 983 S.W.2d at 670. It has been the "longstanding rule that persons seeking relief under the writ must exercise due diligence in presenting the claim." *Id.* Timely filing is an essential element of a coram nobis petition, and the State is not required to raise the statute of limitations as an affirmative defense. *Nunley v. State*, 552 S.W.3d 800, 828 (Tenn. 2018). However, "[t]o accommodate due process concerns, the one-year statute of limitations may be tolled if a petition for a writ of error coram nobis seeks relief based upon new evidence of actual innocence discovered after expiration of the limitations period." *Id.* at 828-29. "'[B]efore a state may terminate a claim for failure to comply with procedural requirements such as statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner.'" *Workman v. State*, 41 S.W.3d 100, 102 (Tenn. 2001) (quoting *Burford v. State*, 845 S.W.2d 204, 208 (Tenn. 1992)). Whether a petitioner is entitled to due process tolling of the statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness. *Nunley*, 552 S.W.3d at 830 (citation omitted).

Although the Petitioner acknowledges that he filed his coram nobis petition outside the one-year statute of limitations, he asserts that he is entitled to tolling of the statute of limitations because the State failed to provide "possibly exculpatory evidence" to which he did not have access until the statute of limitations had expired. He claims that he did not have access to the incident reports through the Freedom of Information Act while his case involving the attempted murder of Mr. Boyd was pending.

In order to obtain coram nobis relief based on newly discovered evidence, a petitioner is required to exercise diligence in bringing his claim. *See Hall*, 461 S.W.3d at 495. The Petitioner has failed to establish that he was diligent in filing his petition for writ of error coram nobis and failed to provide any explanation why the petition was filed over a year after he received the incident reports. During the coram nobis hearing, the Petitioner testified that he received the incident reports in March or April 2014. The Petitioner did not file a coram nobis petition until September 11, 2015, well over a year from the time he received the "newly discovered evidence." We conclude that the Petitioner was not diligent in filing his petitioner for post-conviction relief and is not entitled to coram nobis relief. *See Joan Elizabeth Hall v. State*, No. M2017-01621-CCA-R3-ECN, 2018 WL 6566982, at *10 (Tenn. Crim. App. Dec. 12, 2018) (determining that the petitioner was not entitled to equitable tolling when she did not satisfactorily explain why she waited years after receiving the new evidence before filing her petition for writ of error coram nobis); *Melissa Barnett v. State*, No. E2012-00855-CCA-R3-PC, 2013 WL 709588, at *5) (Tenn. Crim. App. Feb. 26, 2013) (concluding that the statute of limitations should not be told when there is "[n]othing in the record explains why the Petitioner waited over three years to attempt to present her coram nobis claim.").

Further, the incident reports relate only to the attempted murder of the Mr. Boyd, and we cannot conclude that the information in the reports, if presented, may have led to a different result at trial. *See Vasques*, 221 S.W.3d at 525. It is undisputed that the Petitioner did not physically participate in the attack of Mr. Boyd, and there was no testimony at trial that suggested that he did. Rather, as the original prosecutor explained during the coram nobis hearing, the theory was that the Petitioner assisted in planning the attack of Mr. Boyd. The reports are not inconsistent with that theory. The Petitioner has failed to show that this newly discovered evidence may have led to a different result at trial. Accordingly, due process does not dictate the tolling of the statute of limitations.

To the extent that the Petitioner claims that the State failed to disclose the reports in violation of *Brady*, the Tennessee Supreme Court has held that "a coram nobis proceeding is not the appropriate venue to determine whether [a petitioner's] constitutional rights under *Brady* were violated." *Nunley*, 552 S.W.3d at 821. The Petitioner is not entitled to coram nobis relief.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the coram nobis court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE