IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs April 5, 2022

## CURTIS KELLER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 10-07532        James M. Lammey, Judge

————————————————————

### No. W2021-00123-CCA-R3-ECN

————————————————————

After the dismissal of his petition for error coram nobis relief without a hearing, Curtis Keller, Petitioner, appealed. Upon review, we determine that the petition for relief was properly dismissed and affirm the judgment of the coram nobis court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

William F. Walsh, IV (on appeal); and Vicki M. Carriker (on coram nobis), Memphis, Tennessee, for the appellant, Curtis Keller.

Herbert H. Slatery III, Attorney General and Reporter; T. Austin Watkins, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In May of 2010, Petitioner and several accomplices entered a home in Collierville in an attempt to get money from one of the victims that was supposedly owed to Petitioner from a drug transaction. *See State v. Curtis Keller*, No. W20212-00825-CCA-R3-CD, 2013 WL 3329032, at *1-2 (Tenn. Crim. App. June 27, 2013), *perm. app. denied* (Tenn. Dec. 10, 2013). A 911 call originating from inside the home prompted officer response. *Id.* at *2. Petitioner "took off his mask" and tried to escape on foot. *Id.* He was caught outside the home. *Id.* Petitioner was subsequently indicted and tried for his involvement in the incidents taking place that day. As a result, he was convicted of several counts of especially aggravated kidnapping, attempted especially aggravated robbery, especially

aggravated burglary, and three counts of aggravated assault. *Id.* As a result of the convictions, he received a total effective sentence of 240 years in incarceration. *Id.* On direct appeal, Petitioner's conviction for employing a firearm during the commission of a dangerous felony was reversed based on the fact that possessing or employing a firearm was an element of especially aggravated kidnapping, and the conviction for especially aggravated burglary was reduced to aggravated burglary because the same act of causing serious bodily injury to one victim was the basis for both especially aggravated burglary and attempted especially aggravated robbery. *Id.* As a result, Petitioner's total effective sentence was reduced to 210 years. This Court later affirmed the denial of post-conviction relief. *See Curtis Keller v. State*, No. W2016-00416-CCA-R3-PC, 2018 WL 801537, at *1 (Tenn. Crim. App. Feb. 8, 2018), *perm. app. denied* (Tenn. May 18, 2018).

In an unrelated case that went to trial after the Collierville home invasion, stemming from a home invasion in Germantown in May of 2008, Petitioner was convicted of several crimes, resulting in a total effective sentence of 300 years in incarceration. *State v. Curtis Keller*, No. W2012-01457-CCA-R3-CD, 2013 WL 6021332, at *1 (Tenn. Crim. App. Nov. 6, 2013), *remanded* (Tenn. Feb. 11, 2014). On direct appeal in the Germantown case, Petitioner unsuccessfully challenged the chain of custody regarding the admission of a ski mask found in the getaway vehicle that contained his DNA. *Id.* at *16-17. In a subsequent appeal from the denial of post-conviction relief, this Court determined that trial counsel was not ineffective for failing to contest the validity of the DNA found in the ski mask. *Curtis Keller v. State*, No. W2020-00590-CCA-R3-PC, 2021 WL 2886338, at *10 (Tenn. Crim. App. July 9, 2021), *perm. app. denied* (Tenn. Oct. 15, 2021).

Petitioner ultimately filed a petition for writ of error coram nobis in the Germantown case, arguing that he had newly discovered evidence of a TBI report that had not been disclosed that identified a match between an older sample of his DNA (obtained in 2009) and the DNA on the ski mask. *Curtis Keller v. State*, No. W2019-01652-CCA-R3-ECN, 2021 WL 1699277, at *2-3 (Tenn. Crim. App. Jan. 27, 2021), *perm. app. denied* (Tenn. May 14, 2021). The DNA sample in the TBI report (from 2009) was based on a different DNA sample from the sample used in the DNA match that was ultimately introduced at trial (from 2011). *Id.* at *2. The trial court denied the writ summarily. On appeal, this Court affirmed the denial of the writ because the TBI report was "the very definition of cumulative evidence" that could not have benefitted Petitioner. *Id.* at *5.

Now, in the Collierville case, Petitioner filed the subject petition for writ of error coram nobis in January of 2020. In the petition, he claimed that during the error coram nobis proceedings in the Germantown case, he discovered new evidence in the Collierville case in the form of evidence logs that showed the ski mask was tested by the TBI. Petitioner claimed that had he known of the evidence logs at the Collierville trial, he could have impeached the lead detective's testimony that the ski mask from the crime scene was

not tested for DNA.  The State responded to the petition by filing a motion to dismiss the petition as untimely and a response arguing that even if the petition were to be considered timely, Petitioner was not entitled to relief on the merits.

Petitioner filed two amended petitions with the assistance of counsel.  In each of those petitions, he argued that DNA evidence was admitted even though the "chain of custody was not clearly established."  The State responded to the amended petitions, pointing out that the ski mask in the Collierville case was not tested for DNA evidence and that DNA evidence from an unrelated case was not relevant.

The coram nobis court held a hearing on the motion to dismiss at which counsel for Petitioner explained that there was a "chain of custody issue in the collection of some of this evidence . . . used to get a hit on the [Germantown] case."  Petitioner felt that the cases were connected because they used the ski mask and DNA sample from the Collierville case to "tie him to the [Germantown] case."  The prosecutor disagreed, explaining that the cases were not connected other than that after Petitioner's arrest in the Collierville case, a routine DNA sample was taken that matched a DNA profile on the ski mask from the Germantown case.  Counsel for Petitioner responded that Petitioner's family was concerned about the "chain of custody on the particulars" without further explanation and rested on his "pleading."

The coram nobis court entered an order dismissing the petition and denying relief.  Without acknowledging the untimeliness of the petition, the coram nobis court determined that the factual allegations outlined in the petition did not meet the requirements for the writ because "even if true, would [not] have affected the proof."  The court went on to find that Petitioner failed to demonstrate: (1) that any exonerating evidence exists; (2) that even if such evidence exists that it was newly discovered and Petitioner was without fault in presenting it in a prior proceeding; and (3) that if the evidence existed and was admitted that it would not have affected the outcome of the trial.  Petitioner appeals the dismissal of the petition.

*Analysis*

On appeal, Petitioner contends that the coram nobis court abused its discretion by summarily dismissing the petition for relief because the court did not understand his claim.  Specifically, Petitioner argues that he is not relitigating the claim raised in the error coram nobis proceedings from the Germantown case.  Instead, Petitioner insists that he is raising a new claim regarding the impeachment value of the evidence logs for the ski mask found in the Collierville case.  The State argues that the petition for error coram nobis relief is untimely, that Petitioner abandoned the impeachment claim when he amended his petition,

and that the coram nobis court properly denied relief because Petitioner was merely attempting to relitigate an issue previously determined in the Germantown case.

A writ of error coram nobis lies "for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial." T.C.A. § 40-26-105(b); *State v. Hart*, 911 S.W.2d 371, 374 (Tenn. Crim. App. 1995). The writ of error coram nobis is "an *extraordinary* procedural remedy," designed to fill "only a slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999) (emphasis in original). In order to seek coram nobis relief, a petitioner must "establish[] that the petitioner was 'without fault' in failing to present the evidence at the proper time." *Harris v. State*, 102 S.W.3d 587, 592-93 (Tenn. 2003). To be considered "without fault," the petitioner must show that "the exercise of reasonable diligence would not have led to a timely discovery of the new information." *State v. Vasques*, 221 S.W.3d 514, 527 (Tenn. 2007). The coram nobis court will then determine "whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceedings might have been different." *Id.* at 526.

A petition for a writ of error coram nobis must be filed within one year after the judgment becomes final. T.C.A. § 27-7-103. For the purposes of coram nobis relief, a judgment becomes final thirty days after the entry of the judgment in the trial court if no post-trial motion is filed, or upon entry of an order disposing of a timely filed post-trial motion. *Mixon*, 983 S.W.2d at 670. It has been the "longstanding rule that persons seeking relief under the writ must exercise due diligence in presenting the claim." *Id.* "Although the State bears the burden of raising the statute of limitations as an affirmative defense, its failure to do so does not necessarily result in a waiver" so long as "'the opposing party is given fair notice of the defense and an opportunity to rebut it.'" *Wilson v. State*, 367 S.W.3d 229, 234 (Tenn. 2012) (quoting *Sands v. State*, 903 S.W.2d 297, 299 (Tenn. 1995)).

Despite the one-year statute of limitations, due process considerations may require tolling the statute of limitations. *Harris*, 301 S.W.3d at 145 (citing *Workman v. State*, 41 S.W.3d 100, 103 (Tenn. 2001)). Our supreme court has held that, "before a state may terminate a claim for failure to comply with procedural requirements such as statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner." *Workman*, 41 S.W.3d at 102 (quoting *Burford v. State*, 845 S.W.2d 204, 208 (Tenn. 1992)). A court must balance the State's interest in preventing stale and groundless claims with the petitioner's interest in obtaining a hearing to present a later-arising ground for relief. *Harris*, 301 S.W.3d at 145 (citing *Workman*, 41 S.W.3d at 103). As a general rule, the claim at issue must not have existed during the limitations period to trigger due process consideration. *Seals v. State*, 23 S.W.3d 272, 278 (Tenn. 2000). Ignorance as to the existence of a claim

- 4 -

does not create a "later-arising" claim for due process purposes. *See Brown v. State*, 928 S.W.2d 453, 456 (Tenn. Crim. App. 1996); *Passarella v. State*, 891 S.W.2d 619, 635 (Tenn. Crim. App. 1994). Whether due process considerations require tolling of a statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness. *Harris*, 301 S.W.3d at 145.

We agree with the State that Petitioner's claim fails for several reasons. First, his petition for writ of error coram nobis is untimely in that it was filed over four years beyond the expiration of the statute of limitations. Second, on admission of Petitioner through his amended petitions and counsel's statements at the hearing on the motion to dismiss, the evidence presented was intended to be used to collaterally attack the verdict in the Germantown case, not the Collierville case at issue herein. As such, the evidence presented was not newly discovered evidence that would affect the outcome of the trial of the Collierville case at issue in this appeal. *See* T.C.A. § 40-26-105(b).

Now, Petitioner attempts to revive the claim made in his pro se petition for error coram nobis relief, related to the use of the evidence logs for possible impeachment. However, this issue was abandoned by Petitioner when he failed to raise it at the hearing on the motion to dismiss and failed to incorporate it into his amended petition. The writ of error coram nobis "is not a 'catch-all' remedy that enables convicted persons to litigate and relitigate the propriety of their convictions *ad infinitum*." *Harris*, 301 S.W.3d at 148 (Koch, J., concurring) (internal quotation and citation omitted). Petitioner is not entitled to relief.

*Conclusion*

The coram nobis court did not abuse its discretion in dismissing the petition for relief. Accordingly, the judgment of the coram nobis court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE